# Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| GEORGE R. NEELY, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | **CIVIL ACTION NO.: H-07-4517** |
| STATE BAR OF TEXAS, COMMISSION FOR LAWYER DISCIPLINE, J.G. MOLLESTON, TIMOTHY R. BERSCH, VIRGINIA PLOCH and The HONORABLE JACK H. ROBISON, | § § § § § § | |
| Defendants. | § § | |

## THE STATE BAR DEFENDANTS' MOTION TO DISMISS

Charles W. Schwartz
State Bar No. 17861300
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX 77002
Telephone No.: 713-655-5160
Facsimile No.:  888-329-2286

OF COUNSEL:

Kelley M. Keller
State Bar No. 11198240
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX 77002
Telephone No.: 713-655-5155
Facsimile No.:  888-329-2116

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND .....................................................................................................2

    A.    The Parties .................................................................................................2

    B.    The Disciplinary Action ...........................................................................3

          1.    Background .................................................................................3

          2.    Neely's Bank Records ................................................................4

          3.    Procedural History .....................................................................5

ARGUMENT AND AUTHORITIES ........................................................................6

    A.    This Court Should Abstain from Granting Injunctive and Declaratory

        Relief Directed to the Disciplinary Action ..............................................6

    B.    Neely Has No Viable Claim for Money Damages Against the State Bar

        Defendants ...............................................................................................11

          1.    The State Bar Defendants are Entitled to Sovereign Immunity................11

          2.    Molleston and Bersch are Immune From Suit for Their Official

              Actions .....................................................................................12

          3.    Neely Fails to State a Civil Rights Claim Upon Which Relief May

              be Granted .................................................................................16

    C.    This Court Should Decline to Exercise Supplemental Jurisdiction over

        Neely's State-Law Claims........................................................................25

          1.    Neely's Damages Claims are Barred by the *Rooker-Feldman*

              Doctrine.....................................................................................26

          2.    Neely Has Failed to Allege a State-Law Claim for Conversion................27

3.    Neely Has Failed to Allege a State-Law Claim for Intentional

Infliction of Emotional Distress.................................................................28

CONCLUSION.........................................................................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*American Flood Research, Inc. v. Jones*, 192 S.W.3d 581 (Tex. 2006)........................................22

*Anderson v. Pasadena Independent Sch. District*, 184 F.3d 439 (5th Cir. 1999)....................16, 17

*Arnaud v. Odom*, 870 F.2d 304 (5th Cir. 1989)........................................................................17, 18

*Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417 (Tex. 2004) ...........................................14

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003).................................................................................17

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................................16

*Bell v. State*, 233 S.W.3d 583 (Tex. App.—Waco 2007, pet. dism'd)......................................22, 23

*Bell v. Valdez*, 207 F.3d 657, *text available at* 2000 WL 122411, *1 (5th Cir. 2000) ................27

*Bishop v. State Bar*, 791 F.2d 435 (5th Cir. 1986).....................................................................11, 14

*Board of Disciplinary Appeals v. McFall*, 888 S.W.2d 471
    (Tex. 1994)..............................................................................................................8, 9, 26

*Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994) ................................................................................12

*Brooks v. State*, No. 10-05-0025-CR, 2006 WL 1550808 (Tex. App.—Waco 2006, pet.
    ref'd)...........................................................................................................................18

*Brummett v. Camble*, 946 F.2d 1178 (5th Cir. 1991) .....................................................................14

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..........................................................................12, 15

*Butz v. Economou*, 438 U.S. 478 (1978)..............................................................................12, 13, 15

*Chapman v. United States*, No. 4:06-CV-426-Y, 2006 WL 3831227 (N.D. Tex.
    Dec. 27, 2006)...........................................................................................................17, 18

*City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995) ......................................................21

*Coates v. Heartland Wireless Communications, Inc.*, 26 F. Supp. 2d 910 (N.D.
    Tex. 1998)........................................................................................................................16

*Commission for Lawyer Discipline v. George R. Neely*, Case No. 2003-63182 .............................3

iv

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ....................................................................10

*Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003) ...............................................................14, 15

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005) ........................................................28

*Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756 (Tex. App.—Texarkana 1996), rev'd in part on other grounds, 939 S.W.2d 146 (Tex. 1997) .............................................27, 28

*Evans v. State of Texas*, No. 03-01-00013-CR, 2001 WL 838189 (Tex. App.—Austin July 26, 2001, no pet.)..........................................................................................................24

*Favaloro v. Commission for Lawyer Discipline*, 994 S.W.2d 815 (Tex. App.—Dallas 1999, pet. struck)..........................................................................................................18

*Fluor Daniel, Inc. v. H.B. Zachry Co.*, 1 S.W.3d 166 (Tex. App.—Corpus Christi 1999, pet. denied)..........................................................................................................10, 26

*Giovanni v. Lynn*, 48 F.3d 908 (5th Cir. 1995)..........................................................................20

*Greene v. Harris County*, 166 F. App'x 736 (5th Cir. 2006) ..........................................................7

*Green v. State Bar*, 27 F.3d 1083 (5th Cir. 1994)................................................................11, 13, 14

*Groom v. Fickes*, 966 F. Supp. 1466 (S.D. Tex.), aff'd, 129 F.3d 606 (5th Cir. 1997) ..........14, 15

*Harris v. Ashby*, 45 F. App'x 325 (5th Cir. 2002)................................................................11, 13

*Harris v. United States*, 340 F. Supp. 2d 764 (S.D. Tex. 2004) ....................................................2

*Henderson v. Wellmann*, 43 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.)..........29

*Hensler v. District Four Grievance Committee of the State Bar*, 790 F.2d 390 (5th Cir. 1986) ..........................................................................................................8

*Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979)........................................................................15

*Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872 (5th Cir. 2004)..........................................................................................................17

*Hicks v. Brysch*, 989 F. Supp. 797 (W.D. Tex. 1997)..................................................................20

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) ..................................28, 29

*Holleman v. McKee*, No. Civ. A. H-05-0178, 2006 WL 126650 (S.D. Tex. Jan. 17, 2006)...16, 18

*Howard v. Stover*, 240 F.3d 1073 (5th Cir. 2000) ........................................................................21

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................12, 13, 14, 15

*Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996) ......................................27

*Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003)..................................16

*King v. Douglass*, 973 F. Supp. 707 (S.D. Tex. 1996) ................................................................16

*Liedtke v. State Bar*, 18 F.3d 315 (5th Cir. 1994)........................................................................10

*Middlesex County Ethics Committee v. Garden State Bar Association*,
    457 U.S. 423 (1982)...............................................................................................................7

*Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358 (Tex. App.—Houston [1st Dist.]
    2007, no pet.) .......................................................................................................................17

*National Liability & Fire Insurance Co. v. Allen*, 15 S.W.3d 525 (Tex. 2000) ......................21, 22

*Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979 (S.D. Tex. 1997)................................27

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)....................................................................................12

*Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002) .......................................................................16, 17

*Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580 (5th Cir. 1992) ...............25

*Pelt v. State Board of Insurance*, 802 S.W.2d 822 (Tex. App.—Austin 1990, no writ) ...............21

*Prigmore v. Houston Pizza Ventures, Inc.*, 189 F. Supp. 2d 635 (S.D. Tex. 2002) ...............28, 29

*Riggs v. City of Pearland*, 177 F.R.D. 395 (S.D. Tex. 1997) ..................................................14, 17

*Riley v. Louisiana State Bar Ass'n*, 214 F. App'x. 456, 459 .........................................................26

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)......................................................................10

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ...............................................................20, 21

*SEC v. OKC Corp.*, 474 F. Supp. 1031 (N.D. Tex. 1979) .............................................................18

*Scott v. Harris*, 127 S. Ct. 1769 (2007) ......................................................................................12

*Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252 (5th Cir. 2000)......................................19

*In re Smith*, 123 F. Supp. 2d 351 (N.D. Tex. 2000) ................................................................19

*Smith v. City of Picayune*, 56 F.3d 1386 (5th Cir. 1995) ..........................................................7

*Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998) ..............................28

*In re Stamps*, 173 F. App'x 316 (5th Cir. 2006) ......................................................................19

*In re State Bar*, 113 S.W.3d 730 (Tex. 2003) ..........................................................................10

*State Bar v. Evans*, 774 S.W.2d 656 (Tex. 1989) ....................................................................19

*State Bar v. Gomez*, 891 S.W.2d 243 (Tex. 1994) .....................................................................9

*State Bar v. Jefferson*, 942 S.W.2d 575 (Tex. 1997) .......................................................8, 9, 26

*State v. Investigation*, 802 So. 2d 1141 (Fla. Dist. Ct. 2001) .............................................23, 24

*Stoker v. State*, 788 S.W.2d 1 (Tex. Crim. App. 1989) ...........................................................18

*Texas A&M University System v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007) .............................11

*Texas Department of Transport v. Jones*, 8 S.W.3d 636 (Tex. 1999) .....................................12

*Torres v. GSC Enterprises, Inc.*, No. 08-05-00321-CV, 2007 WL 2965779 (Tex. App.—
El Paso Oct. 11, 2007) ..........................................................................................................29

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) ..................................................................28

*United States v. Miller*, 425 U.S. 435 (1976) ..........................................................................23

*Walter v. United States*, 447 U.S. 649 (1980) .........................................................................18

*Warden v. Barnett*, 252 F.3d 1356 (5th Cir. 2001) ...................................................................2

*Wightman v. Texas Supreme Court*, 84 F.3d 188 (5th Cir. 1996) ................................8, 10, 22

*Wilcox v. Miller*, 691 F.2d 739 (5th Cir. 1982) .........................................................................7

*Will v. Hallock*, 546 U.S. 345 (2006) ......................................................................................12

*Williams v. Rubiera*, 539 F.2d 470 (5th Cir. 1976) ................................................................7, 8

*Young v. Biggers*, 938 F.2d 565 (5th Cir. 1991) ......................................................................16

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................................6

vii

## STATUTES

42 U.S.C. § 1983 ...................................................................................................17, 20

42 U.S.C. § 1985 .......................................................................................................17

42 U.S.C. § 1986 .......................................................................................................17

28 U.S.C. § 1257 .......................................................................................................10

28 U.S.C. § 1367(c)(3) ..............................................................................................25

FED. R. CIV. P. 12(b)(6) ..............................................................................................1

STATE BAR RULES ART. XI, §§ 5-7 ..............................................................................4

TEX. CIV. STAT. ART. 342-705 ....................................................................................21

TEX. CONST. art. V, § 6(a) .........................................................................................22

TEX. DISCIPLINARY R. PROF'L. CONDUCT 1.14 .........................................................3, 4

TEX. GOV'T CODE ANN. § 22.221(a) ..........................................................................22

TEX. GOV'T. CODE ANN. § 81.011 ...............................................................................2

TEX. GOV'T. CODE ANN. § 81.071 ...............................................................................2

TEX. R. CIV. P. 215.2(b) ......................................................................................20, 21

TEX. R. DISCIPLINARY P. 3.08(F) ................................................................................5

TEX. R. DISCIPLINARY P. 3.16 ...................................................................................10

TEX. R. DISCIPLINARY P. 3.08 *Preamble* ...................................................................9

TEX. R. EVID. 511 ......................................................................................................24

## THE STATE BAR DEFENDANTS' MOTION TO DISMISS

Defendants the Commission for Lawyer Discipline (the "CLD"), the State Bar of Texas (the "SBOT"), J.G. Molleston ("Molleston"), and Timothy R. Bersch ("Bersch") (collectively, the "State Bar Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), respectfully submit this Motion to Dismiss Plaintiff's Original Complaint and Application for Injunctive Relief (the "Complaint") filed by Plaintiff George R. Neely ("Neely").

## PRELIMINARY STATEMENT

This action is an improper attempt by Neely, a Texas licensed attorney, to interfere with a State Bar disciplinary proceeding pending against him in a Harris County District Court (the "Disciplinary Action"). Neely seeks here essentially the same relief that he has already sought unsuccessfully in the Disciplinary Action – the exclusion of certain documentary evidence – as well as damages for alleged civil rights violations and state-law claims. Neely's attempt to obtain from this Court relief for which he has adequate opportunities to seek in the pending Disciplinary Action is barred by the *Younger* abstention doctrine. Moreover, all of Neely's claims fail as a matter of law because: (1) the claims against the State Bar Defendants are barred by immunities available to the Defendants; and (2) Neely has not stated a viable claim for relief for violation of his civil rights, conversion, or intentional infliction of emotional distress.

# BACKGROUND[1]

## A.   The Parties.

Neely is licensed to practice law in the state of Texas and is the respondent in the Disciplinary Action.

The SBOT is a public corporation and an administrative agency of the judicial department of the government of Texas. TEX. GOV'T CODE ANN. § 81.011 (Vernon 2005).

The CLD is a committee of the SBOT. Each attorney practicing in Texas is "subject to the disciplinary and disability jurisdiction of the [Texas] supreme court and the Commission for Lawyer Discipline." TEX. GOV'T CODE ANN. § 81.071 (Vernon 2005).

Molleston and Bersch[2] are employed by the CLD as Assistant Disciplinary Counsel. Bersch is in charge of the Disciplinary Action on behalf of the CLD.

Virginia Ploch ("Ploch") is an individual alleged by Neely to be Neely's former employee. Ploch is not a party to this Motion.

The Texas Supreme Court assigned the Honorable Jack H. Robison ("Robison"), Judge of the 207th District Court of Comal County, Texas, to preside over Neely's Disciplinary Action in

---

[1]   The facts set forth below are taken from the allegations in Plaintiff's Complaint and from the proceedings in the Disciplinary Action, which the Court properly may consider in deciding this motion to dismiss. *See Harris v. United States*, 340 F. Supp. 2d 764, 768 (S.D. Tex. 2004) ("While a court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referred to in and central to the complaint); *Warden v. Barnett*, 252 F.3d 1356, *1 n.2 (5th Cir. 2001) (table op.) (noting that the district court could consider a state court petition – "a publicly filed document not offered for the truth of the matters alleged therein" – submitted with Rule 12(b)(6) motions to dismiss).

[2]   Exhibits to this Motion to Dismiss are attached to the affidavit of Timothy Bersch, Assistant Disciplinary Counsel with the SBOT, attached hereto and incorporated herein as Exhibit A.

state district court in Harris County, Texas.[3]  This Court dismissed the claims asserted against

Robison without prejudice on December 27, 2007.  [Docket No. 3][4]

**B.      The Disciplinary Action.**

  **1.      Background.**

The CLD filed the Disciplinary Action in 2003, pursuant to the Texas Rules of

Disciplinary Procedure and chapter 81 of the Texas Government Code, asserting violations of

State Bar rules regarding client trust accounts.  (*See* Compl. ¶ 11; Bersch Aff. Ex. 2.)  That

action is currently pending in the 164th Judicial District Court of Harris County Texas, styled

*Commission for Lawyer Discipline v. George R. Neely*, Case No. 2003-63182.  The Disciplinary

Action was filed in response to a grievance filed in August 2002 by Ploch with the Office of the

Chief Disciplinary Counsel of the SBOT.  (*See* Compl. ¶ 9.)  Specifically, the CLD alleged that

Neely violated the Texas Disciplinary Rules of Professional Conduct, which provide, in part, as

follows:

> (a) A lawyer shall hold funds and other property belonging in whole or in part to
> clients or third persons that are in a lawyer's possession in connection with a
> representation separate from the lawyer's own property.  Such funds shall be kept
> in a separate account, designated as a "trust" or "escrow" account, maintained in
> the state where the lawyer's office is situated, or elsewhere with the consent of the
> client or third person.  Other client property shall be identified as such and
> appropriately safeguarded.  Complete records of such account funds and other
> property shall be kept by the lawyer and shall be preserved for a period of five
> years after termination of the representation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(a).  (Bersch Aff. Ex. 2.)

---

[3]  *See* Order of the Texas Supreme Court, Misc. Docket No. 04-9251 (Oct. 19, 2004) (Bersch Aff. Ex. 1.)

[4]  This Court further sua sponte denied Neely's request for a temporary restraining order.  [Docket No. 3].

### 2.    Neely's Bank Records.

Neely challenges the CLD's use as evidence in the Disciplinary Action of certain of Neely's banking records obtained by the CLD (the "Bank Records") through a subpoena to Frost National Bank ("Frost") issued in February 2004.  (*See* Compl. ¶ 11.)  According to Neely, the Bank Records were improperly obtained because Neely was not served with notice of the CLD's subpoena.  *Id.*  Neely further complains that Ploch stole certain of Neely's banking records and provided same to the CLD in connection with her grievance against Neely.[5]  (*Id.* ¶ 9.)  Therefore, Neely contends, the Bank Records obtained by subpoena from Frost, even if properly obtained, are "fruit of the poisonous tree."  (*Id.* ¶ 12.)

The Bank Records relate to Neely's "IOLTA"[6] account.  The CLD requested that Neely produce the records of his trust accounts, including cancelled checks and check stubs, through a Request for Production served on Neely in January 2004.  (Compl. ¶ 12.)  Neely objected to the production.  On June 23, 2004, the CLD moved to compel the production.  (Bersch Aff. Ex. 3.)  The state district court granted the CLD's Motion to Compel on April 19, 2007.  (Bersch Aff. Ex. 4.)

Neely and Ploch were involved in their own litigation in 2003 over fees alleged owed by Ploch's husband to Neely.  (Compl. ¶ 9.)  The settlement agreement entered in that litigation included a requirement that Ploch "return copies of checks and other documents in her possession taken from George Neely's office and agrees not to discuss the contents of same with

---

[5]    Consistent with federal practice on a motion to dismiss, the State Bar Defendants have accepted as true the allegations contained in Neely's Complaint.  Nothing herein shall be construed as an admission by the State Bar Defendants of any of the allegations therein.

[6]    "IOLTA" refers to Interest on Lawyers' Trust Accounts – client trust accounts established pursuant to the Texas Equal Access to Justice Program.  *See* State Bar Rules Art. XI, sections 5-7; TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14; and Rules Governing the Operation of the Texas Equal Access to Justice Foundation.

anyone." (Compl. Ex. 19, at 3.)  Neely apparently believes that the settlement agreement with Ploch somehow restricts the CLD's ability to use the Bank Records.  (Compl. ¶ 13.)  However, the settlement agreement between Ploch and Neely expressly states that the clause requiring the return of the checks "does not effect official state or federal proceedings." (Compl. Ex. 19, at 3.) Ploch's grievance, *i.e.*, an official state proceeding, was already pending with the State Bar of Texas at that time.  (*See* Compl. ¶¶ 9, 13.)  The disciplinary rules expressly provide that the CLD's pursuit of a disciplinary matter does not depend on whether the respondent attorney is able to resolve issues with respect to the complaining person or on the complaining person's continued involvement in the disciplinary matter.  *See* TEX. R. DISCIPLINARY P. 3.08(F),[7] 15.04. Accordingly, that settlement agreement (to which the CLD was not a party) between Ploch and Neely did not obligate the CLD to return any documents to Neely or otherwise legally restrict the CLD's use of the documents.

### 3.      Procedural History.

Neely has requested that the district court exclude the bank records.  (*See, e.g.,* <u>Bersch Aff. Ex. 5</u>.)  The CLD filed a Motion for Partial Summary Judgment on August 10, 2007, relying in part on the Bank Records.  (*See* <u>Bersch Aff. Ex. 6</u>.)  Neely again objected to the evidence in responding to the motion.  (*See* <u>Bersch Aff. Ex. 7</u>.)  The district court heard the CLD's motion on September 10, 2007.  The Court indicated concern regarding the use of the Bank Records, but took the CLD's motion under advisement and invited additional briefing on the issue.  (*See* Comp. Ex. 24, at 96.)  Responding to Judge Robison's invitation, Neely filed a Motion to Suppress and to Exclude and to Dismiss on October 9, 2007 (*See* <u>Bersch Aff. Ex. 8</u>.), and the

---

[7]      TEX. R. DISCIPLINARY P. 3.08(F) provides:  "The unwillingness or neglect of a Complainant to assist in the prosecution of a Disciplinary Action, or a compromise and settlement between the Complainant and the Respondent, does not alone justify the abatement or dismissal of the action."

CLD filed a Supplement to Petitioner's Response to Respondent's Motion for Sanctions to Exclude Documents on October 15, 2007 (*See* Bersch Aff. Ex. 9.). During a hearing on October 17, 2007, Judge Robison announced that he would allow the use of the records and would grant the CLD's motion. (Compl. ¶ 15.)

Unhappy with the decision announced by Judge Robison, Neely filed a Motion to Reconsider Motion to Suppress and to Exclude and to Dismiss on December 17, 2007. (*See* Bersch Aff. Ex. 10.) The next day, Neely filed a Motion to Recuse Judge Robison in the Disciplinary Action on December 18, 2007. (*See* Bersch Aff. Ex. 11.)

Neely now through this action seeks injunctive relief against the use of the Bank Records in the Disciplinary Action and monetary damages based on the proceedings in the Disciplinary Action. (Compl. ¶ 18.)

**ARGUMENT AND AUTHORITIES**

A.    **This Court Should Abstain from Granting Injunctive and Declaratory Relief Directed to the Disciplinary Action.**

In seeking to enjoin use of the Bank Records in the Disciplinary Action, Neely clearly seeks to interfere with a pending State Bar disciplinary proceeding. The *Younger* abstention doctrine compels that this Court abstain from interfering with the pending Disciplinary Action. Indeed, Neely's own actions in the state district court show that he has adequate legal remedies available to him in the pending state court action.

The United States Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), recognized the "longstanding public policy against federal court interference with state court proceedings," (*id.* at 43-44) holding that the alleged unconstitutionality of a statute "did not justify an injunction against good-faith attempts to enforce it" in a state court. *Id.* at 55. Since then, courts have consistently declined to enjoin state court criminal proceedings, citing "*Younger*

6

abstention." *See, e.g., Smith v. City of Picayune*, 56 F.3d 1386, *1 (5th Cir. 1995) (table op.); *Wilcox v. Miller*, 691 F.2d 739, 741 (5th Cir. 1982). In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court confirmed that *Younger* abstention is proper when a party seeks to enjoin *a pending non-criminal state attorney disciplinary proceeding* and outlined a three-pronged inquiry for *Younger* abstention in the context of a state bar disciplinary proceeding:  (1) does the state bar proceeding constitute an ongoing state judicial proceeding; (2) does the proceeding implicate important state interests; and (3) is there an adequate opportunity in the state proceeding to raise constitutional challenges. The Disciplinary Action meets the three-part test for *Younger* abstention.

First, the CLD Disciplinary Action indisputably is an ongoing state judicial proceeding, as evidenced by Neely's own Complaint. (*See* Compl. ¶¶ 14, 15.)  Neely's request for injunctive and declaratory relief is directed to the proceedings in that action.  (*See* Compl. ¶¶ 15, 18.) Specifically, Neely requests that this Court enjoin the "use and/or mention of any of Plaintiff's bank records by Defendants in this action" – that is, Neely seeks to void Judge Robinson's decision to admit the Bank Records into evidence. (Compl. ¶ 18.)  Although Neely seeks only to enjoin the enforcement of Judge Robison's decision to admit the Bank Records into evidence, rather than enjoining the action in its entirety, *Younger* abstention is still appropriate.  *See Greene v. Harris County*, 166 F. App'x 736, 737 (5th Cir. 2006) ("It is immaterial that appellants do not seek to enjoin the entire state court proceedings but merely to control the decision of one matter therein."); *Williams v. Rubiera*, 539 F.2d 470, 473-74 (5th Cir. 1976).  The Fifth Circuit in *Rubiera* held that the *Younger* abstention doctrine barred a federal court from granting declaratory relief that the plaintiff was constitutionally entitled to appointed counsel in a welfare fraud criminal prosecution in state court, reasoning:

> If relief were granted in this case it would have the effect of a federal court telling a state court how to run an ongoing criminal prosecution, *i.e.*, whether it could constitutionally try the defendant without appointed counsel.
>
> An injunction against a trial without appointed counsel would, of course, be direct federal interference in the state criminal prosecution.   The issuance of only declaratory relief would not seem to alter the result.

*Id.* at 473-74.   An injunction against the admission of the Bank Records in the Disciplinary Action, or a declaration "declaring the rights of Plaintiff to the possession and confidentiality of his documents" would have the effect of telling the state court how to run the Disciplinary Action. This is impermissible under *Younger* and its progeny.

Second, the Disciplinary Action implicates important state interests.   The Fifth Circuit recognized that the state has "an obvious and compelling interest in regulating the practice of law and controlling unethical activities by the practitioners admitted to its bar." *Hensler v. Dist. Four Grievance Comm. of the State Bar*, 790 F.2d 390, 392 (5th Cir. 1986).[8]   Accordingly, the Court affirmed the dismissal of an action brought to enjoin a grievance committee investigation, under the *Younger* abstention doctrine. *Id.*; *see also Wightman v. Tex. Sup. Ct.*, 84 F.3d 188 (5th Cir. 1996).

In addition, it is well settled under Texas law that parties may not seek relief in state district courts to interfere in pending attorney grievance proceedings because the Texas Supreme Court "has established a comprehensive system of lawyer discipline governed by the Rules of Disciplinary Procedure." *State Bar v. Jefferson*, 942 S.W.2d 575, 576 (Tex. 1997); *see also Bd. of Disciplinary Appeals v. McFall*, 888 S.W.2d 471, 472-473 (Tex. 1994).   The Texas Supreme Court has broad and exclusive powers to exercise judicial power and regulate the practice of law

---

[8]   The Fifth Circuit noted an exception to the *Younger* abstention doctrine might exist if there were allegations and proof of bad faith. *Hensler*, 790 F.2d at 391. However, the court noted that the bad faith exception "is narrow and is to be granted parsimoniously." *Id.* at 392. There are no allegations in this case sufficient to sustain a finding of bad faith.

in Texas pursuant to, among other provisions, article II, section 1, and article 5, sections 1, 3, and 31 of the Texas Constitution. In the Preamble to the Texas Rules of Disciplinary Procedure, the Supreme Court explained the purpose and process for attorney disciplinary proceedings in the State of Texas:

> The Supreme Court of Texas has the constitutional and statutory responsibility within the State for the lawyer discipline and disability system, and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability in a manner that does not discriminate by race, creed, color, sex, or national origin. To carry out this responsibility, the Court promulgates the following rules for lawyer discipline and disability proceedings. Subject to the inherent power of the Supreme Court of Texas, the responsibility for administering and supervising lawyer discipline and disability is delegated to the Board of Directors of the State Bar of Texas. Authority to adopt rules of procedure and administration not inconsistent with these rules is vested in the Board. This delegation is specifically limited to the rights, powers, and authority herein expressly delegated.

*See* TEX. R. DISCIPLINARY P. *Preamble.*

In *Jefferson*, lawyers subject to grievance proceedings successfully petitioned a district court for a temporary restraining order on allegations of irregularities in the conduct of the proceedings. *See Jefferson,* 942 S.W.2d at 575. The Texas Supreme Court, in an original action brought by the SBOT, held that the district court had no authority and no jurisdiction to interfere with attorney grievance proceedings and granted a writ of mandamus directing the district court to refrain from interfering in the pending disciplinary proceedings. *Id.* at 576; *see also State Bar v. Gomez,* 891 S.W.2d 243, 244–45 (Tex. 1994) (concluding "a district court does not have authority to grant relief that would unreasonably usurp the supervisory control vested exclusively in the supreme court . . . [governing] supervisory control of the practice of law"); *McFall,* 888 S.W.2d at 472 (noting that pursuant to the Texas Government Code, the Texas Supreme Court "has established a comprehensive system of lawyer discipline governed by the Rules of Disciplinary Procedure" and granting a mandamus to overturn a district court's temporary

9

restraining order enjoining enforcement of an order by the Board of Disciplinary Appeals ("BODA") suspending an attorney from the practice of law); *In re State Bar,* 113 S.W.3d 730, 735 (Tex. 2003) (holding that the district court "not only abused its discretion by interfering with BODA's jurisdiction but continues to interfere with BODA's jurisdiction by retaining the pending claims").

Third, Neely, as the respondent in the Disciplinary Action, has adequate opportunity to pursue any defenses available to him, including challenges to the evidence.  In addition, the Texas attorney disciplinary system provides ample opportunity for attorneys to raise any constitutional concerns they may have with respect to the proceedings. *See Wightman,* 84 F.3d at 190 (noting that an attorney subject to a disciplinary proceeding may "raise his constitutional and procedural claims at the investigatory hearing, in either the district court or before the State Bar grievance committee, and in subsequent appeals").

If Neely has any complaints, substantive or procedural, arising from the Disciplinary Action, he has the protections of appeal.  Pursuant to TEX. R. DISCIPLINARY P. 3.16, a final judgment of the district court may be appealed "as in civil cases generally."  Accordingly, Neely may appeal first to the Texas Court of Appeals, then to the Texas Supreme Court pursuant to the Texas Rules of Appellate procedure, and if he believes that his constitutional rights have been violated, ultimately to the United States Supreme Court pursuant to 28 U.S.C. § 1257.[9]  *See Wightman,* 84 F.3d at 190 ("Texas's extensive and lengthy disciplinary procedures protect [attorneys] against bad faith behavior by the State Bar.").

---

[9]  Moreover, any attempt to challenge any orders in the Disciplinary Action is barred by the *Rooker-Feldman* doctrine.  *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923); *Liedtke v. State Bar,* 18 F.3d 315, 317 (5th Cir. 1994); *Fluor Daniel, Inc. v. H.B. Zachry Co.,* 1 S.W.3d 166, 168 (Tex. App.—Corpus Christi 1999, pet. denied) ("Under the *Rooker-Feldman* doctrine, federal district courts, as courts of original jurisdiction, lack jurisdiction to review, modify, or nullify final orders of state courts.").

**B.**     **Neely Has No Viable Claim for Money Damages Against the State Bar Defendants.**

    **1.**     **The State Bar Defendants are Entitled to Sovereign Immunity.**

The State Bar Defendants are entitled to sovereign immunity encompassing immunity from suit and liability. *See Green v. State Bar*, 27 F.3d 1083, 1087-1088 (5th Cir. 1994) (affirming dismissal and holding that a committee of the State Bar of Texas and its agents are immune from suit under the Eleventh Amendment); *Bishop v. State Bar*, 791 F.2d 435, 438 (5th Cir. 1986) (holding that the SBOT is a state agency "such that an action for damages is barred by the eleventh amendment"); *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[A] plaintiff's suit should be dismissed when either the pleadings alone or the jurisdictional evidence demonstrates that the plaintiff's suit incurably falls outside any waiver of sovereign immunity." (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). "The Eleventh Amendment divests federal courts of jurisdiction to entertain official-capacity suits against [a State Bar committee], which is a state agency, *and the [committee] attorneys, who are state employees*." *Harris v. Ashby*, 45 F. App'x 325, *text available at* 2002 WL 1899583, at *1 (5th Cir. 2002) (emphasis added) (citing *Green*, 27 F.3d at 1087-88).

Neely's allegations against Molleston and Bersch are based on alleged conduct undertaken by them solely in their capacity as counsel for the CLD. Neely's central claim is that Molleston knowingly obtained the Bank Records under a subpoena issued without notice to Neely. Even accepting the allegations as true, they clearly relate to Molleston's conduct as counsel for the CLD, a state agency. Thus, the allegations on their face establish that Molleston is entitled to absolute immunity from suit.[10] For the same reasons, assuming that Neely asserts

---

[10]     As discussed below, Neely fails to state any particularized facts regarding conduct by Bersch.

the same claims against Bersch,[11] the claims against Bersch should also be dismissed on the basis of immunity.

Immunity from suit defeats a court's subject matter jurisdiction.  *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638-639 (Tex. 1999).   Accordingly, Neely's Complaint for damages against the State Bar Defendants must be dismissed under the Eleventh Amendment.

### 2.      Molleston and Bersch are Immune From Suit for Their Official Actions.

Molleston and Bersch also are entitled to prosecutorial immunity.   Prosecutors are entitled to absolute prosecutorial immunity for all conduct "intimately associated with the judicial phase of the criminal process."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Absolute immunity affords "immunity from suit," rather than mere immunity from liability.  *See Imbler*, 424 U.S. at 434; *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).[12]  The Supreme Court in *Butz v. Economou*, 438 U.S. 478, 479 (1978), recognized that "there are some officials whose special functions require a full exemption from liability."   Stating that "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location," the Supreme Court granted absolute immunity to the federal agency attorneys performing functions analogous to those of a prosecutor.  *See id.* at 512.  The Court in *Economou* reasoned:

> [A]gency officials performing certain functions analogous to those of a prosecutor
> should be able to claim absolute immunity with respect to such acts.  . . . An

---

[11]   As noted below, Neely has failed to identify any action by Bersch upon which Neely's complaint is based.   However, there is no indication that Neely intends to assert any claim for action taken by Bersch other than in his capacity as counsel for the CLD.

[12]   Absolute immunity is among a narrow and selective class of defenses that are subject to interlocutory appeal if denied.  *See Scott v. Harris*, 127 S. Ct. 1769, 1774 n.2 (2007); *Will v. Hallock*, 546 U.S. 345, 350-51 (2006) (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 758 (1982)).

agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. . . .

The discretion which [such] officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. . . . An individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts. . . .

We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Id.* at 515-516 (citations omitted). *See also Imbler*, 424 U.S. at 423 (Absolute prosecutorial immunity is founded on the concern that "unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.").

"Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Economou*, 438 U.S. at 512. The Supreme Court further held that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* at 517.

The Fifth Circuit in *Harris v. Ashby*, addressed prosecutorial immunity in the context of the State Bar Unauthorized Practice of Law Committee (the "UPLC") – a sister committee of the CLD – and held that attorneys for the UPLC would be entitled to absolute prosecutorial immunity with respect to the plaintiff's claims against them individually for actions taken in their capacities as counsel for the UPLC, even though UPLC actions are civil actions. *Harris*, 2002 WL 1899583, at *1. Previously, the Fifth Circuit in *Green v. State Bar*, had compared the UPLC

13

counsel to public prosecutors, stating that it was "persuaded that the duties performed by [UPLC counsel] are analogous to those of public prosecutors and agency officials in the administrative adjudication process." 27 F.3d at 1088.

Claims of absolute prosecutorial immunity are appropriately decided on a Rule 12(b)(6) motion to dismiss. *See Imbler*, 424 U.S. at 416, 431 (1976) (affirming trial court's grant of the defendant's Rule 12(b)(6) motion to dismiss based on absolute prosecutorial immunity); *Groom v. Fickes*, 966 F. Supp. 1466, 1470, 1478 (S.D. Tex.) (granting prosecutor's Rule 12(b)(6) motion to dismiss based on absolute prosecutorial immunity and qualified immunity), *aff'd*, 129 F.3d 606 (5th Cir. 1997).[13] The immunity extends not "'only to the act of initiation [of the prosecution] itself and to conduct occurring in the courtroom,'" but also to all actions "'which occur in the course of [the prosecutor's] role as an advocate for the State.'" *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (quoting *Buckley*, 509 U.S. at 272-73). The propriety of the conduct is not a consideration when determining whether immunity applies. Even willful, malicious or egregious misconduct is covered by absolute immunity. *See Cousin*, 325 F.3d at 635; *Brummett v. Camble*, 946 F.2d 1178, 1182 (5th Cir. 1991) (prosecutorial immunity applies "regardless of [the prosecutor's] motives").

The defense of absolute prosecutorial immunity also extends to pretrial activity, so long as the prosecutor is acting as an advocate for the government. In particular, the Fifth Circuit has taken an expansive view of the protection afforded by absolute prosecutorial immunity for

---

[13]   Moreover, Molleston and Bersch would be entitled to a qualified official immunity in a suit for damages. *See Bishop*, 791 F.2d at 438 ("Recognizing the importance of the disciplinary process to the judiciary, courts have afforded broad immunity to members of bar grievance committees and their staff.") "Official immunity protects public officials from suit arising from performance of their (1) discretionary duties (2) in good faith (3) within the scope of their authority." *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422 (Tex. 2004) (citations omitted). Neely has failed to allege any factual or legal basis to overcome the qualified immunity. *See Riggs v. City of Pearland*, 177 F.R.D. 395, 405 (S.D. Tex. 1997).

pretrial activities. *See, e.g., Cousin*, 325 F.3d at 633 n.6 (rejecting argument that the collection of information for use in a prosecution is necessarily investigative rather than advocatory). A "significant factor" for distinguishing pre-trial investigation from advocacy is whether probable cause has been established as to a particular suspect and whether an indictment has been returned. *Id.* at 633. "[A]fter probable cause has been established, it is more likely that the prosecutor acts as an advocate." *Id.* Accordingly, trial preparation, which "may require the obtaining, reviewing, and evaluating of evidence," is protected by absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 431 n.33.

Acts taken by a prosecutor in preparing for or participating in a trial are protected by absolute immunity. *See Buckley*, 509 U.S. at 272-73 (noting that an "out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity" (alteration in original) (citation omitted)); *Cousin*, 325 F.3d at 633 n.6, 635 (absolute immunity for telling a witness to "implicate . . . falsely" a criminal defendant; rejecting case law which held that absolute immunity did not apply to collection of evidence for use in a prosecution); *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (absolute immunity applies "'where the prosecutor knowingly used perjured testimony'" (citation omitted)); *Groom*, 966 F. Supp. at 1472 (same (quoting *Henzel*, 608 F.2d at 657)).

Molleston's and Bersch's official responsibilities to pursue civil enforcement disciplinary actions are analogous, for immunity considerations, to those of a prosecutor. Because attorney disciplinary actions are "judge-supervised trials" and have adequate procedural safeguards, attorneys Molleston and Bersch are entitled to such absolute immunity for litigating such matters on behalf of the CLD. *See Economou*, 438 U.S. at 512.

15

**3.      Neely Fails to State a Civil Rights Claim Upon Which Relief May be Granted.**

A complaint should be dismissed under Rule 12(b)(6) if it "appears beyond doubt that [plaintiffs] can prove no set of facts in support of their claims that would entitle them to relief." *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 913 (N.D. Tex. 1998). *See also Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). The court must accept as true the complaint's allegations "and view them in the light most favorable to plaintiffs." *Coates*, 26 F. Supp. 2d at 914. However, a plaintiff must plead specific facts, not merely conclusory allegations. *Kane Enters.*, 322 F.3d at 374; *King v. Douglass*, 973 F. Supp. 707, 725 (S.D. Tex. 1996) ("While in the context of a motion to dismiss under Rule 12(b)(6), the Court will accept a plaintiff's well-pleaded facts as true, it will not take as true conclusory allegations of fact."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A plaintiff's conspiracy complaints must be plausible, not just conceivable, and mere allegations of "parallel conduct" are not enough to avoid dismissal. *See id.* at 1965-66, 1974.

In addition, a plaintiff suing governmental officials in their individual capacities for civil rights violations faces a heightened pleading standard. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Young v. Biggers*, 938 F.2d 565, 569-70 (5th Cir. 1991); *Holleman v. McKee*, No. Civ.A. H-05-0178, 2006 WL 126650, at *2 (S.D. Tex. Jan. 17, 2006) ("The Fifth Circuit continues to adhere to a 'heightened pleading' standard in civil rights cases against government officials."). Accordingly, the plaintiff must allege "specific conduct giving rise to a constitutional violation."

16

*Oliver*, 276 F.3d at 741 (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

Section 1983 is not itself a source of substantive rights. Rather, it provides only a mechanism for vindicating other federal rights. *See Hernandez v. Texas Dept. of Protective and Regulatory Servs.*, 380 F.3d 872, 879-80 (5th Cir. 2004) ("It is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws."); *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). Accordingly, a plaintiff in a section 1983 action must show that: "1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Bauer*, 341 F.3d at 357. *See also Arnaud v. Odom,* 870 F.2d 304, 307 (5th Cir. 1989) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a pleading that raises a section 1983 claim must allege both that someone violated a right that the Constitution or laws of the United States secures and that the offender did so under color of state law.").

Neely has failed to plead an action under 42 U.S.C. § 1983.[14] Noticeably absent from the Complaint are any factual allegations to reflect a deprivation of a constitutional or statutory right under the color of state law. Although, Neely alleges that the Bank Records "were unconstitutionally obtained and used in violation of" his civil rights, there is no factual or legal

---

[14] Neely's claims under sections 1985 and 1986 are conspiracy claims. Because a conspiracy claim is derivative in nature and requires an underlying cause of action, *see Riggs v. City of Pearland*, 177 F.R.D. 395, 409 (S.D. Tex. 1997) ("The absence of a foundation for § 1983 liability precludes a § 1985 conspiracy claim [] predicated on the same allegations."); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381-82 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Civil conspiracy is considered a derivative tort because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable."); *Chapman v. United States*, No. 4:06-CV-426-Y, 2006 WL 3831227 at *2 (N.D. Tex. Dec. 27, 2006) (noting that liability under 42 U.S.C. § 1986 is derivative of liability under 42 U.S.C. § 1985(3)), Neely's claims under sections 1985 and 1986 similarly fail as a matter of law.

basis to support a civil rights claim arising from the CLD's receipt or use of the Bank Records. (Compl. ¶ 12.)

> **a.     Neely Cannot Complain of a Civil Rights Violation Based on the Receipt by the CLD of Allegedly Stolen Bank Records.**

Neely alleges that the SBOT originally received copies of his bank records from Ploch who allegedly stole them from Neely's office.  (Compl. ¶ 9.)  Neely does not allege, and could not allege, that Ploch was acting for, on behalf of, or at the request of the SBOT in taking the documents or forwarding them to the SBOT.  A civil rights claim necessarily requires state action, *i.e.* a deprivation of rights "'secured by the Constitution and laws' of the United States *by persons acting under color of state law*."  *Arnaud*, 870 F.2d at 307 (emphasis added).  "[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and 'such private wrongdoing does not deprive the government of the right to use evidence.'" *Stoker v. State*, 788 S.W.2d 1, 11 (Tex. Crim. App. 1989) (en banc) (quoting *Walter v. United States*, 447 U.S. 649, 656 (1980)); *see also Brooks v. State*, No. 10-05-00225-CR, 2006 WL 1550808, at *2 (Tex. App.—Waco 2006, pet. ref'd) (memorandum opinion) ("The purpose of both the Fourth Amendment and Article I, section 9 of the Texas Constitution is to safeguard an individual's legitimate expectation of privacy from unreasonable *governmental* intrusions.") (emphasis added).  Accordingly, Neely has no cause of action under section 1983 against the State Bar Defendants arising from Ploch's alleged delivery of the records to the SBOT.  *See SEC v. OKC Corp.*, 474 F. Supp. 1031, 1040-41 (N.D. Tex. 1979) (finding that the SEC had not violated the Fourth Amendment rights of a company under investigation in having received a report prepared by counsel for that corporation from an employee of that corporation).  Moreover, the constitutional protections regarding search and seizures are protections afforded to defendants in criminal cases. *Favaloro v. Comm'n for Lawyer Discipline*, 994 S.W.2d 815, 822

(Tex. App.—Dallas 1999, pet. struck).  State Bar disciplinary actions are not criminal cases, but are civil in nature.  *Id.*; *see also State Bar v. Evans*, 774 S.W.2d 656, 657 n.1 (Tex. 1989) ("Clear Texas authority is that disciplinary proceedings are civil in nature.").[15]

Neely's complaint that Ploch "stole" certain financial records is irrelevant.  The documents alleged to have been stolen and delivered to the CLD include checks written by Neely and payable to and delivered to Ploch. (Neely Ex. 21.)  Accordingly, Ploch's right to possession of those documents would be equal to that of Neely – Ploch could have lawfully retained a copy of every check written to her by Neely prior to cashing same and could have turned those copies over to the SBOT.  Moreover, as a practical matter, Ploch did not need to supply copies of *any checks* to initiate her grievance, nor did the CLD need copies of same to begin an investigation.  The CLD could have initiated its investigation simply on an allegation by Ploch that her payroll checks were drawn on Neely's IOLTA account.  That the SBOT *received* copies, whether or not stolen, did not deprive Neely of any constitutional or statutory right.[16]

---

[15]   Although the Fifth Circuit has characterized attorney disbarment proceedings as "quasi-criminal" in nature, the attorney cannot claim all of the constitutional protections available in a criminal proceeding.  Rather, the constitutional guarantees extend to notice an opportunity to be heard.  *See, e.g., In re Stamps*, 173 F. App'x 316, 318 (5th Cir. 2006) ("Attorneys facing disciplinary proceedings are not entitled to receive all the guarantees afforded the accused in a criminal case."); *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254-55 (5th Cir. 2000) ("It is well settled in this Circuit that while in disbarment proceedings, due process requires notice and an opportunity to be heard, only rarely will more be required."); *In re Smith*, 123 F. Supp. 2d 351, 354 (N.D. Tex. 2000) (finding that attorney did not have a Sixth Amendment right to a jury trial in a disciplinary proceeding to revoke the attorney's membership in the federal court), *aff'd*, 275 F.3d 42 (5th Cir. 2001).  Neely does not complain of a lack of notice of the proceedings against him or the denial of an opportunity to be heard.

[16]   Indeed, demonstrating the adequacy of the procedural safeguards afforded to him within the state court proceeding, Neely has asserted and continues to raise legal issues related to the use of such copies.  If the state court finally denies Neely's assertions, Neely still has appellate opportunities available.  Thus, Neely cannot claim the CLD has deprived him of any such rights which are subject to adjudication by the Texas courts, and ultimately the United States Supreme Court.

      **b.**      **Neely Cannot Base a Civil Rights Complaint on an Alleged Failure to Comply with a Rule of Civil Procedure in Serving the Subpoena on Frost.**

To the extent that Neely complains of irregularities in the subpoena served on Frost, the Complaint fails to state a claim under Section 1983.

      **i.**      **Failure to Comply with State Procedural Rules Does Not Implicate Constitutional or Statutory Rights.**

At best, the Complaint reflects an alleged failure to comply with a procedural requirement under the Texas Rules of Civil Procedure, *i.e.*, failure to serve notice of a subpoena to a nonparty on the parties to the litigation. TEX. R. CIV. P. 215.2(b). However, a failure to follow a state rule of civil procedure does not implicate a constitutional or statutory right. *See Hicks v. Brysch*, 989 F. Supp. 797, 812 (W.D. Tex. 1997). A civil rights claim premised on a failure to follow a rule of civil procedure, in fact, is not only insufficient as a matter of law, but is legally frivolous. *Id.* As explained in *Hicks*:

> Absent some showing that the defendant violated plaintiffs' *constitutional* rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983. Thus, insofar as plaintiff alleges merely that the defendant failed to comply with applicable Texas statutes, those allegations, standing alone, do not provide even an arguable basis for either recovery of monetary damages or a finding that plaintiff is entitled to injunctive or declaratory relief under Section 1983.

*Id.* (footnote omitted); *see also Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) ("Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process.").

Moreover, there simply is no constitutional right to notice of a subpoena of customer records served on a financial institution. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984) ("[T]he Court has held that a customer of a bank cannot challenge on Fourth Amendment grounds the admission into evidence in a criminal prosecution of financial records obtained by

the Government from his bank pursuant to allegedly defective subpoenas, despite the fact that he

was given no notice of the subpoenas."); *see also Pelt v. State Bd. of Ins.*, 802 S.W.2d 822, 831

(Tex. App.—Austin 1990, no writ) (an order, subpoena, or request issued under Tex. Civ. Stat.

art. 342-705[17] "is not rendered 'ineffective' if the customer fails to receive a copy of the

notice").[18]

   ii.  **Neely Has an Adequate Remedy Through the Disciplinary Action.**

   Neely's remedy for failure to serve notice is governed by Tex. R. Civ. P. 21b, which

provides:

> If any party fails to serve on or deliver to the other parties a copy of any pleading, plea, motion, or other application to the court for an order in accordance with Rules 21 and 21a, the court may in its discretion, after notice and hearing, impose an appropriate sanction available under Rule 215-2b.

Tex. R. Civ. P. 21b.  As reflected in Neely's Complaint, Neely sought exclusion of the Bank

Records with the district court.  (Compl. ¶¶ 14, 15.)  Judge Robison declined to grant the relief,

and indicated his intent to allow the Bank Records into evidence in support of the CLD's Motion

for Partial Summary Judgment.  (*Id.* ¶ 15.)

   The trial court has discretion to admit or exclude evidence.  *Nat'l Liab. & Fire Ins. Co. v.*

*Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000); *City of Brownsville v. Alvarado*, 897 S.W.2d 750,

753 (Tex. 1995).  Orders regarding the admission of evidence, as well as sanctions are

---

[17] This statue has since been repealed.

[18] Familiar examples of subpoenas issued without notice include grand jury and regulatory agency investigations in which the target of the investigation may not even be aware of the investigation, much less receive notice of subpoenas served on third parties.  *See, e.g., Jerry T. O'Brien, Inc.*, 467 U.S. at 741 ("No provision in the complex of statutes governing the SEC's investigative power expressly obliges the Commission to notify the 'target' of an investigation when it issues a subpoena to a third party."); *Howard v. Stover*, 240 F.3d 1073, *text available at* No. 99-11402, 2000 WL 1835077, at *1 (5th Cir. 2000) ("The documents were procured through a *subpoena duces tecum* issued by a grand jury to a person in possession of the documents.  Thus, Howard was not entitled to notice of the subpoena.  A *subpoena duces tecum* is not itself a search or seizure." (citation omitted)).

reviewable for an abuse of discretion. *See Allen*, 15 S.W.3d at 527-28 (evidence); *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (sanctions). Neely has not alleged that Judge Robison abused his discretion in declining to sanction the CLD regarding the subpoena to Frost National Bank. However, if Neely believes that Judge Robison did abuse his discretion in failing to exclude the Bank Records, Neely's available remedies include reconsideration by the state judge (which Neely has requested) and an appeal under state law,[19] but do not include a separate civil rights action in federal court. *See Wightman*, 84 F.3d at 190 (recognizing an attorney's right to appeal from a disciplinary action).

> ### iii.   Neely Has Failed to State Independent Grounds for Exclusion of the Bank Records.

Although Neely contends that he would have filed a motion to quash had he been served with a copy of the CLD's subpoena to Frost, he fails to allege a cognizable basis upon which the court could have quashed the subpoena had Neely been served with a copy. (*See* Compl. ¶ 12.) Neither the "fruit of the poisonous tree" doctrine nor any privileges protect the Bank Records from production under the subpoena.

> #### a.   The Bank Records Are Not Fruit of the Poisonous Tree.

Even if Ploch's taking was wrongful, the fruit of the poisonous tree doctrine is inapplicable and does not bar use of the Bank Records.

> Under the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal detention, search, or seizure must be suppressed, unless the State shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.

---

[19]   An aggrieved litigant may also seek immediate relief through a mandamus proceeding under appropriate circumstances. *See* TEX. GOV'T CODE ANN. § 22.221(a) (Vernon 2004); *see also* TEX. CONST. art. V, § 6(a).

*Bell v. States*, 233 S.W.3d 583, 587 (Tex. App.—Waco 2007, pet. dism'd)  As reflected in the statement of the doctrine itself, the doctrine contemplates wrongful conduct *by the government authority in obtaining the evidence, i.e.*, evidence *seized or gathered in violation of the Fourth Amendment. Id.* at 587-88. As noted above, Ploch's action in obtaining copies of checks was not *state action*.  Accordingly, neither the Fourth Amendment nor the fruit of the poisonous tree doctrine bar use of the Bank Records.  Moreover, the "fruit of the poisonous tree" is an exclusionary rule applied in criminal cases, not civil case.  *See Baxter v. Tex. Dept of Human Resources*, 678 S.W.2d 265 (Tex. App.—Austin 1984, no writ) ("[t]he exclusionary rule codified in TEX. CODE CR. P. 38.23 (Supp. 1984) is inapplicable to the present case because the Code of Criminal Procedure applies only to criminal cases").  As noted above, this is not a criminal action.

### b.      The Bank Records Are Not Confidential or Privileged.

There is no right to privacy in banking records.  *United States v. Miller*, 425 U.S. 435, 442 (1976).  Nor are an attorney's banking records in the possession of a bank subject to an attorney/client privilege.  *State v. Investigation*, 802 So. 2d 1141 (Fla. Dist. Ct. App. 2001).  Accordingly, Neely could not quash the subpoena to Frost on privacy or confidentiality grounds.

The Court in *Miller* considered the constitutional ramifications of a document production by a bank to a government agency under a subpoena without notice to the customer.  The Court held: "We find that there was no intrusion into any area in which respondent had a protected Fourth Amendment interest and that the District Court therefore correctly denied respondent's motion to suppress." *Id.* at 440.  The Court went on to say:

> Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate "expectation of privacy" in their contents. **The checks are not confidential communications but negotiable instruments to be used in commercial transactions.**  All of the documents obtained, including financial

23

statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.

*Id.* at 442 (emphasis added).

The Bank Records are checks written by third parties to the client and Neely, checks written by third parties to Neely for the benefit of the client, checks written by the client to Neely to facilitate a representation, checks written by Neely to or on behalf of the client, and checks written by Neely to third parties – all of which have passed through the banking system, and any privilege has been waived. Thus, even if a privilege had existed, it has been waived under TEX. R. EVID. 511 and *Miller*. *See also Evans v. State of Texas*, No. 03-01-00013-CR, 2001 WL 838189, at *1, *5 (Tex. App.—Austin July 26, 2001, no pet.) (not designated for publication) (citing *Miller* and holding that a defendant had no privacy rights in bank records).

In the Florida case of *State v. Investigation*, a state's attorney sought lawyer trust account records from the bank where the trust account was open, with the equivalent of a grand jury subpoena. 802 So. 2d at 1144. The purpose of the subpoena was to investigate whether an individual had used the attorney's client trust account to launder funds. *Id.* at 1143. The court held:

> Persse argues that, regardless of the trial court's erroneous proof requirements, the trial court correctly quashed the subpoena because his client trust account records are protected from disclosure by the attorney-client privilege. This argument has no merit because the attorney-client privilege does not cover the subpoenaed records in this case. The records at issue are those of a third party – the bank. Information in the hands of a third party is not covered by the attorney-client privilege. Had the State's subpoena sought client trust account records directly from Persse, we might have to examine the issue more carefully. Here, however, when the subpoena is directed to a third party for records held by the third party, the attorney-client privilege is inapplicable.

*Id.* at 1145.

The privileges Neely speciously claimed in refusing to answer the CLD's discovery and in attempting to exclude the admission of the Bank Records do not affect the CLD's ability to

24

obtain the materials from a third party to whom Neely has revealed the materials claimed to be privileged or to use the Bank Records in the Disciplinary Action.

        **c.     Neely Has Failed to Allege *Any* Action by Bersch.**

Neely fails to identify *any* action by Bersch in violation of any alleged right.  Neely's sole references to Bersch, beyond his identification of Bersch as a party, are the following:

> The materials sent to judge Robison by Ploch were outside the record of the [Disciplinary Action] and included copies of pleadings in a bankruptcy adversary that Ploch would have only known about through Molleston and Bersch.

and

> [Ploch] could only have learned of the hearing date from Molleston and/or Bersch.

(Compl. ¶ 15.[20])

These allegations fail to state a section 1983 claim against Bersch.  The Complaint wholly fails to connect the allegations with respect to Bersch to any alleged constitutionally protected rights of Neely or state how such action could have violated such rights.

**C.     This Court Should Decline to Exercise Supplemental Jurisdiction over Neely's State-Law Claims.**

As demonstrated above, this action should be dismissed in its entirety as the request for injunctive and declaratory relief is barred by the *Younger* doctrine, the State Bar Defendants are entitled to immunity with respect to the claims for damages, and Neely has failed to state a civil rights claim.  However, in the event the Court does not dismiss this action in its entirety, the Defendants request that this Court decline to exercise supplemental jurisdiction, 28 U.S.C. § 1367(c)(3), over Neely's state-law claims of conversion and intentional infliction of emotional distress.  *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).  Denial of supplemental jurisdiction in this case would be consistent with the practice of

---

[20]    Neely repeats this allegation at paragraph 24 of the Complaint in stating his "causes of action."

the Texas state courts which decline to interfere with on-going disciplinary actions, *see Jefferson*, 942 S.W.2d at 576; *McFall*, 888 S.W.2d at 472-73, and with Fifth Circuit precedent favoring dismissal of pendent state claims when the federal claim is eliminated at an early stage of the litigation and the district court has a powerful reason to chose not to continue jurisdiction, *see Parker & Parsley*, 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

In any event, if the Court determines that it should exercise supplemental jurisdiction over any remaining state-law claims, the Court may dismiss the state-law claims on their merits because Neely's claims are barred by the *Rooker-Feldman* doctrine and Neely has failed to state a cause of action for conversion or intentional infliction of emotional distress and the State Bar Defendants are absolutely immune from such claims under state law.

### 1.   Neely's Damages Claims are Barred by the *Rooker-Feldman* Doctrine.

In seeking money damages against the State Bar Defendants, Neely presupposes the finality of the Disciplinary Action, *e.g.*, loss or suspension of his law license resulting from the alleged conversion of certain financial records.  (*See* Compl. ¶ 25.)  However, Neely's attempt to seek money damages flowing from the decisions of Judge Robison is either premature as no final adverse disciplinary action against Neely has occurred or, if such event does occur, is barred by the *Rooker-Feldman* doctrine.  "Under the *Rooker-Feldman* doctrine, federal district courts, as courts of original jurisdiction, lack jurisdiction to review, modify, or nullify final orders of state courts." *Fluor Daniel, Inc. v. H.B. Zachry Co.*, 1 S.W.3d 166, 168 (Tex. App.—Corpus Christi 1999, pet. denied); *see also Riley v. Louisiana State Bar Ass'n*, 214 F. App'x. 456, 459 ("Even if Riley's complaint is not a direct challenge to the denial of his application for readmission, his complaint falls under the aegis of *Rooker-Feldman* because it raises issues 'inextricably intertwined' with a state court judgment, such that the district court was 'in essence being called

26

upon to review the state-court decision.'") (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).  The attempt to cast the challenge in the context of a civil rights action seeking monetary damages does not save Neely's complaint from the *Rooker-Feldman* bar.  *See Riley*, 214 F. App'x. at 458 (affirming dismissal under *Rooker-Feldman* despite "attempts to frame the alleged violations of his civil rights as original claims"); *Bell v. Valdez*, 207 F.3d 657, *text available at* 2000 WL 122411, *1 (5th Cir. 2000) ("The *Rooker-Feldman* doctrine has frequently been used to dismiss civil rights complaints that . . . are in essence challenges to state court divorce decrees."); *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996) (agreeing with the district court's conclusion that "even though the federal case was 'dressed up' as a claim for RICO damages or for attorney malpractice, it was, nevertheless a collateral attack on a state court judgment" and dismissal under *Rooker-Feldman*).

## 2. Neely Has Failed to Allege a State-Law Claim for Conversion.

"Conversion is the wrongful exercise of dominion or control over another's property to the exclusion of or inconsistent with the true owner's rights in the property." *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 981 (S.D. Tex. 1997).  Neely alleges that the CLD improperly obtained and converted his confidential bank records and "other personal and confidential documents and records." (Compl. ¶ 26.)  Neely's conversion claim appears to be based on the allegation that the CLD obtained and used the Bank Records in connection with the Disciplinary Action.  In particular, Neely appears to complain of the CLD's possession of *copies* of the Bank Records. (*Id.*)

To plead a conversion claim based upon a *copy*, a plaintiff must allege that he has been deprived of exclusive possession due to the wrongful taking of the copy. *See Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 763 (Tex. App.—Texarkana 1996) (involving a claim for conversion of a copy of a customer list), *aff'd in part, rev'd in part on other grounds*, 939

27

S.W.2d 146 (Tex. 1997). As set forth above, Neely has not pled sufficient facts to establish that CLD's possession was *wrongful*. Moreover, Neely has not pled that the CLD's possession of *copies* of the Bank Records has deprived him of exclusive possession. While a *copy* of a customer list itself has value because it contains proprietary information that would give a party a competitive advantage over the rightful owner of the list, the Bank Records do not. Finally, Neely must plead that the alleged conversion was a proximate cause of his injury. *See id.*, 939 S.W.2d at 148. The Complaint contains no such allegation. Neely also has not shown any damages resulting from such alleged misconduct.

3. **Neely Has Failed to Allege a State-Law Claim for Intentional Infliction of Emotional Distress.**

Neely is barred as a matter of law from pursing a claim for intentional infliction of emotional distress. Under Texas law, intentional infliction of emotional distress is a "gap-filler" cause of action, which means that it is only available when no alternative cause of action would provide a remedy for the alleged severe emotional distress caused by the defendant's conduct. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998); *see also Prigmore v. Houston Pizza Ventures, Inc.*, 189 F. Supp. 2d 635, 643-44 (S.D. Tex. 2002). Put differently, if the defendant's conduct would support alternative causes of action, a plaintiff is barred from pursuing intentional infliction of emotional distress, regardless of whether the plaintiff's alternative claims are successful. *See Hoffmann-La Roche*, 144 S.W.3d at 448. Neely's intentional infliction of emotional distress claim is premised on the *same* factual allegations as its other causes of action, and therefore, it is axiomatic that other causes of action are available. Accordingly, Neely's claim for intentional infliction of emotional distress is barred and should fail as a matter of law.

In any event, Neely has not properly pled the elements for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress contains four elements: (1) that the defendant acted "intentionally or recklessly"; (2) that the conduct was "extreme and outrageous"; (3) that the actions of the defendant caused the plaintiff emotional distress; and (4) that the emotional distress suffered by the plaintiff was "severe." *Id.* at 445; *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993). In order to satisfy the extreme and outrageous requirement, "a defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Torres v. GSC Enters., Inc.,* ___ S.W.3d ____, No. 08-05-00321-CV, 2007 WL 2965779, at *7 (Tex. App.—El Paso Oct. 11, 2007, no pet.) (citing *Twyman,* 855 S.W.2d at 621); *see also Prigmore,* 189 F. Supp. 2d at 644.

As a matter of law, a defendant's conduct is not extreme and outrageous when the defendant permissibly asserts a legal right. *See Torres,* 2007 WL 2965779, at *8 ("There is no liability for intentional infliction of emotional distress where an actor does no more than insist on his legal rights."); *Henderson v. Wellmann,* 43 S.W.3d 591, 597 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that an employee's filing of sexual harassment charges, even if false, "do not rise to the level of extreme and outrageous conduct necessary for a claim of intentional infliction of emotional distress"). Therefore, Neely is barred from pursuing an intentional infliction of emotional distress claim based on CLD's proper exercise of its legal right to investigate a grievance and pursue an administrative proceeding against Neely, regardless of whether the allegations in the proceeding are ultimately found to be true or false.

Finally, Neely's complaint contains no allegation that Neely suffered severe emotional distress as a result of CLD's actions.  Neely's failure to plead the damage element of the cause of action justifies dismissal of the claim for that reason alone.

## CONCLUSION

For the reasons set forth above, Defendants the Commission for Lawyer Discipline, the State Bar of Texas, J.G. Molleston, and Timothy R. Bersch respectfully request that this Court grant this Motion to Dismiss and that all claims by Plaintiff against such Defendants be dismissed with prejudice.  A proposed order is attached.

Dated:  January 22, 2008.

Respectfully submitted,

*/s/ Charles W. Schwartz*
Charles W. Schwartz
State Bar No. 17861300
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX 77002
Telephone No.: 713-655-5160
Facsimile No.:  888-329-2286

OF COUNSEL:

Kelley M. Keller
State Bar No. 11198240
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, TX 77002
Telephone No.: 713-655-5155
Facsimile No.:  888-329-2116

**ATTORNEYS FOR DEFENDANTS
STATE BAR OF TEXAS, COMMISSION
FOR LAWYER DISCIPLINE, J.G.
MOLLESTON, and TIMOTHY R.
BERSCH**

30

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2008, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. All others were served a copy via U.S. mail postage prepaid:

George R. Neely
540 Heights Boulevard
Houston, TX 77007

Virginia Ploch
10311 Sagerock Dr.
Houston, TX 77089

/s/ Charles W. Schwartz
Charles W. Schwartz