# Exhibit 10

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

FEB 2 9 2008

MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| GEORGE R. NEELY, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-4517 |
| | § | |
| STATE BAR OF TEXAS, COMMISSION | § | |
| FOR LAWYER DISCIPLINE, J.G. | § | |
| MOLLESTON, TIMOTHY R. BERSCH, | § | |
| VIRGINIA PLOCH AND THE HONORABLE | § | |
| JACK H. ROBISON, | § | |
| DEFENDANTS. | § | |

### PLAINTIFF'S RESPONSE TO THE STATE BAR DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES GEORGE R. NEELY , Plaintiff herein, and files this, his Response To The State Bar Defendants' Motion To Dismiss, and in connection therewith would show unto the Court as follows:

### PREFACE

Defendants' Motion To Dismiss is, in reality, an attempt to avoid judicial scrutiny in federal court of bad faith collusive conduct clearly violative of Plaintiff's constitutional rights, as alleged in Plaintiff's Complaint and Supplemental exhibits thereto, of which this Court is requested to take judicial notice. Further, Defendant's motion to stay discovery is a merely ploy to prevent Plaintiff from obtaining discovery from the defendants to support his

bad faith allegations herein. Plaintiff opines that, based on the authority cited herein below, this Court must hold an evidentiary hearing in connection with Plaintiffs claims of bad faith, irreparable harm, and exceptional circumstances justifying not applying the *Younger* abstention doctrine sought by Defendants. The facts, as pled by Plaintiff, clearly require this Court's intervention in the state disciplinary proceeding, removed to federal court under Cause No. H-08-0569, based on the analysis that **(1)** Plaintiff asserted the following claims in the former state disciplinary proceeding:

"2.2   Further, Petitioner violated Respondents constitutional rights to due process and his rights of privacy under the Right to Financial Privacy Act, 12 U.S.C. §3401, et seq, by improperly obtaining Respondents bank records.

2.3   Further, the allegations that Respondent violated Rules 1.14(a), 1.04(d) and 1.15(d), as well as the Rules themselves, are vague and do not put Respondent on notice such that same can be enforced against him since the Rules in question are vague, and are unconstitutional, as to the alleged conduct of Respondent, are void for vagueness and violate Respondent rights to be fairly informed of the alleged rules he violated.".

Plaintiff  does not have an adequate remedy/procedure and/or opportunity in the state court proceeding for litigating his constitutional claims asserted herein, and, inter alia, **(2)** the state has no legitimate interest in protecting the Defendants from the consequences of conspiring to deprive Plaintiff of his constitutional rights by stealing Plaintiff's bank records and conspiring against him to have him disbarred. Plaintiff asserts that he is entitled to an order granting him prospective injunctive relief which precludes the Defendants from entering a judgment of disbarment and/or reinstating him to the practice of law. Additionally, since there is not an identity of parties and claims extant herein with the state disciplinary action, this Court should not stay and/or abate the instant action

against Defendants herein pending the resolution, vel non, of the state court disciplinary proceedings, removed to federal court in Cause No. H-08-0569. **(3)** Finally, there is no pending state court proceeding from which to abstain. The factual recitation herein is taken largely from Plaintiff's Complaint and affidavit of Plaintiff on file herein, of which this Court is requested to take judicial notice. Plaintiff has filed a notice of removal of the state disciplinary court proceedings based on Defendants representations herein, inter alia, that the same constitutional issues are present therein are present herein. Due process at its elementary level requires notice reasonably calculated, **under all circumstances,** to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections. *Braswell v. Haywood Regional Medical Center, 352 F. Supp. 2d 639 (W.D.N.C. 2005).* This principle would apply to Plaintiff's right to receive notice of the Defendants efforts to obtain his bank records and an opportunity to assert his objections thereto. Further, the court observed that an impartial decision maker is an essential element of due process. In the instant matter, not only did Plaintiff not have an opportunity to receive notice of the action taken by Defendants, when they covertly obtained his confidential bank records, but then he was denied an impartial decision maker, Judge Robison, when the Defendants engaged in exparte communications with Judge Robison intended to influence him to change his ruling, which he did, as well as Judge Robison discussing Plaintiff's disciplinary case with another Judge, see Plaintiff's supplemental exhibits to Plaintiff's Original Complaint. Deprivations of due process abounded in the state disciplinary action as a result of the conspiracy, which began with the stealing of Plaintiff's confidential bank records from Plaintiff's office by Ploch.

Defendants erroneously contend that Plaintiff had or has an opportunity to raise his constitutional claims asserted herein in the state court disciplinary action below. They

allege that Plaintiff should not be entitled to raise his claims herein and that the Court should dismiss the instant action. Such claims are without support or authority. In *Williams v. Codd, 459 F. Supp. 804 (S.D. N.Y. 1978),* the court held that when otherwise extraneous evidence indicating malice by officials is introduced in state proceedings, the Defendant cannot later argue that the Plaintiff's claim of deprivation of civil rights, raised in subsequent federal court action, should be denied on the ground that the same facts had been presented by the Plaintiff in the prior state court proceedings. The court also noted that the same set of facts may give rise to more than one cause of action. Plaintiff herein should not be limited by this Court from obtaining injunctive relief, after an evidentiary hearing to determine bad faith and other extraordinary circumstances, and from obtaining monetary damages from Defendants herein at trial.

## SUMMARY

Plaintiff is entitled to an injunction against the State Bar Of Texas ("SBOT")and Commission For Lawyer Discipline ("CFLD") to preclude them from entering a judgment of disbarment and or discipline against him, based on a continuous pattern of conduct against him, egregious bad faith conduct described herein, and exceptional circumstances conclusively establishing irreparable harm to Plaintiff through the loss of a constitutionally protected property right, his license to practice law, without due process of law. Further, Defendants have unclean hands and have acted in such a fashion as justifies this Court denying them the abstention relief they have requested. Further, since no final order or judgment has been entered in the state court proceedings, currently pending under Cause No. H-08-0569, the injunctive relief sought would be prospective, not retroactive, which is not precluded by *Younger.*

## Factual Background

During the Summer of 2002, Respondent terminated Defendant Ploch from his employment for violating firm confidentiality policies. Although she did not have permission to enter Respondent's office, she did so after she was terminated and, without Respondent's knowledge and/or permission, stole a number of things, including financial records including copies of checks. See the Houston Police Department reporting receipt and offense report attached to the affidavit of Plaintiff and submitted with his Original Complaint. Thereafter, Plaintiff sued Ploch and her husband for fees owed Plaintiff for handling a case for Ploch's husband. During litigation with Ploch and her Husband, Plaintiff obtained copies of **Ploch's e-mails**, submitted with Plaintiff's affidavit, which chronicle her hatred for Plaintiff and **a desire to "... take George down anytime"**, and encouraging Ms. Mary Ann Knezek, one of Plaintiff's former client's, to take a tape recorder to meetings with Plaintiff and tape conversations for their future use in their conspiracy to destroy Plaintiff's practice of law. The SBOT and the CFLD were included as an integral part of the conspiracy, the purpose of which was to get Plaintiff disbarred. Also attached to Plaintiff's affidavit are certified copies of Ms. Knezek's affidavits filed in state court proceedings indicating that , inter alia, Ploch had secreted a key to Plaintiff's office she used to gain access to Plaintiff's office to steal bank records and copies of checks after she was terminated. See also attached to Plaintiff's affidavit Ms. Knezek's e-mails to Ploch documenting  their joint desire to prosecute grievances against Plaintiff. The SBOT and CFLD were participants in the conspiracy against Plaintiff to get Plaintiff disbarred. See also a letter from Ms. Knezek to the State Bar Of Texas in October of 2002 concerning Ploch's theft of Plaintiff's bank records and checks. Based on the affidavits of Ms. Knezek and other evidence, Judge Tony Lindsay entered a Temporary Restraining Order ("TRO")

precluding Ploch from having, using and divulging confidential documents and information she removed from Plaintiff's office. Ploch gave SBOT Plaintiff's stolen documents pursuant to the conspiracy in connection with a grievance she filed against Plaintiff in about August 2002.

In September of 2002, Plaintiff sent SBOT a letter requesting the return of his stolen bank records. Again, in October of 2002, Plaintiff furnished Mr. Leo Suter with SBOT a copy of the TRO precluding the Ploch's and anyone acting by and through them from using, having and divulging the content of the documents stolen from Plaintiff's office and requested the return of Plaintiff's records. The stolen documents obtained during the course of executing the conspiracy were never returned by SBOT and CFLD.

Based on the documents stolen pursuant to the conspiracy, and other divulged confidential information, the subject of the TRO, CFLD, a co-conspirator, filed Cause No. 2003-63182 ("the action") against Plaintiff on November 17, 2003, over 4 years ago. Said lawsuit was not prosecuted between the summer of 2004 and April of 2007, principally, based on Plaintiff's Frost National Bank records being improperly obtained by Defendant Molleston, pursuant to the conspiracy, **without giving Plaintiff proper constitutional notice and an opportunity to be heard**, under the Texas Rules Of Civil Procedure ("TRCP") of the bogus subpoena served on Frost National Bank( Rules 21, 21a, 21b and 205; as well as Rule 176 pertaining to the use of subpoena's). Under Rule 176, TRCP, O' Connor's cites *In re Diversicare Gen. Partner, 41 S.W. 3d 788, 794 (Tex. App.-- Corpus Christi 2001, orig. proceeding).* and states " **[A] party may compel discovery from a nonparty by ... serving a notice on the nonparty -- and all parties pursuant to Rule 205.2 and a subpoena compelling production of documents. The nonparty must then respond in accordance with Rule 176**

**which provides the nonparty with an opportunity to make objections to the production and to move for a protective order."** Clearly, the intent is to give the parties their **constitutional right to notice and an opportunity to be heard.** All such furtive and clandestine actions taken by Defendants in obtaining the Frost Bank records were committed in furtherance of the unlawful conspiracy and had the effect of depriving Plaintiff of his constitutional guaranteed right to notice and a hearing thereon, which all parties hereto agree is required in the state disciplinary proceedings.

In January of 2004, Molleston and CFLD served a request for production of documents on Plaintiff seeking certain IOLTA bank account records. Plaintiff filed an objection to the document production requested. Molleston sent Plaintiff a letter stating that if Plaintiff did not agree to a compromise on the document production issue, he would promptly file a motion to compel. See Molleston's letter of February 12, 2004. He did not file any such motion until after he had the documents and filed them in the district clerk's office in about May of 2004, since he knew he would have been required to go before Judge Evans, seeking production of the Bank records based on information contained in bank records  stolen by Ploch  and the subject of a TRO precluding the use of same. Molleston knew that Judge Evans would not only deny the motion to compel, but that the claims, based on the records stolen by Ploch, and the subject of a TRO and Agreed Injunction, would be dismissed because of the said court orders precluding her possession and use of same and them being the **fruit of the poisonous tree doctrine,** later referred to by Judge Robison on September 10, 2007. Judge Robison replaced Judge Evans in October of 2004. Instead, he decided to create a bogus "subpoena" to Frost National Bank to obtain Plaintiff's IOLTA bank account records for the time period of from the Summer of 2001 to the Summer of 2002. See the "subpoena" served by Molleston via mail and not

filed with the Court and for which no officers return was executed and filed with the court, as required by the Texas Rules Of Civil Procedure, which is attached to the affidavit of Plaintiff. Also, he intentionally refused to give notice of same, as required by Rules 21, 21a, 21b and 205, TRCP, for had he done so, a motion to quash would have been filed by Plaintiff and he would be compelled to explain to Judge Evans why he was seeking discovery based on stolen documents from Ploch, which were precluded by the state court TRO. Ergo, Molleston's decision to send Frost National Bank a sham "subpoena" was calculated and intentional. The legal flaws of the "subpoena" and the manner of its use preclude it from even qualifying as a "subpoena" of the Court, which would be the only judicial authority Molleston could use to obtain Plaintiff's bank records. Ergo, he obtained Plaintiff's IOLTA bank records illegally, unconstitutionally, and had possession of them without any legally cognizable authority. Later, when it was discovered that he had obtained the Bank records from Frost National Bank, he claimed that §59.006 of the Texas Finance Code allowed he and the other conspirators to obtain the bank records without giving Plaintiff his **constitutional due process notice and opportunity to be heard on a motion tp quash same pursuant to the due process equal protection rights afforded Plaintiff under the U.S. Constitution**. Judge Robison held that §59.006 of the Texas Finance Code is not applicable to the manner in which Molleston and the other conspirators obtained Plaintiff's bank records (see *British International Insurance Company, LTD v. Seguros La Republica, S.A. 200 F.R.D. 6 (W.D. Tex 2000)*) and has also held that Molleston and CFLD were required to give Plaintiff notice of the "subpoena" served on Frost National Bank, pursuant to Rules 21, 21a, 21b and 205, TRCP. Thus the necessity of imposing the mandatory exclusion rule for, inter alia, violating Plaintiff's constitutional rights to notice and a hearing.

In January of 2003, Plaintiff's litigation with **the Ploch's settled,** and they signed a settlement agreement,  in which they **agreed that they would return all of the documents "...taken from George Neely's office...",** which is further **evidence** that the bank records given SBOT by Ploch were stolen from Plaintiff and subject to the TRO, which explains why CFLD would not use them. The checks being stolen, as well as the information contained therein, precludes the use of both Plaintiff's IOLTA bank records wrongfully obtained by Defendants and the checks stolen from Plaintiff's office by Ploch, all being obtained in violation of  Plaintiff's constitutional rights to his confidential bank records and due process rights in a judicial proceeding and in connection with discovery from third parties, as well as equal protection under the law. The attached letter from Judge David West submitted herewith pertains to and complied with the provision of the **settlement agreement whereby the Ploch's agreed they would return the copies of the checks taken from Respondent's office**, which are the same checks given SBOT by Ploch, once again subject to the TRO precluding her possession and use of same.

On September 10, 2007, when the action was called to trial, Judge Robison concluded that CFLD was required to give Plaintiff his "constitutional due process" notice of the discovery "subpoena" sent to Frost National Bank for IOLTA account records and that if they did not, the documents would be suppressed and excluded for non-compliance with the rules of civil procedure. He said that they were the fruit of the poisonous tree. That being the case, Judge Robison continued, Plaintiff would not have been required to give his deposition and there would be no trial. See the excerpts from the record of September 10, 2007 attached to Plaintiff's affidavit filed with the Original Complaint.

When the action reconvened on October 17, 2007, Judge Robison stated that he was going to allow CFLD to use the Frost National Bank records, and grant CFLD's motion

for summary judgment and that Plaintiff would be allowed to appeal the matter. At that time **CFLD requested that Judge Robison disbar Plaintiff** ( see the transcript excerpts from said hearing submitted as Supplemental Exhibits to Plaintiff's Original Complaint). Plaintiff was not aware at that juncture that Ploch. in furtherance of the conspiracy, had sent an exparte letter to Judge Robison and the SBOT, CFLD, Molleston on October 11, 2007, just before the hearing in an attempt to persuade him to change his exclusion ruling of September 10, 2007. The letter was sent in furtherance of the conspiracy. The materials sent to Judge Robison by Ploch were outside the record of the action and included copies of pleadings in a bankruptcy adversary initiated by the CFLD that Ploch would have only known about through Molleston (who represented the CFLD therein) and Bersch. Further, after over 4 years of silence by Ploch, it was on the eve of the final hearing for the exclusion of the Bank records that Ploch sent the exparte material to Judge Robison, Molleston, Judge Karen Brown, Judge Wesley Steen and Judge Sim Lake. She could only have learned of the hearing date and other facts from Molleston and/or Bersch. Ploch's exparte letter and attached material had been sent to both Judge Robison and Molleston at State Bar via mail and faxed as well on October 11, 2007. Neither Judge Robison nor Molleston mentioned the exparte communication intended to influence Judge Robison on the exclusion issue, all being in furtherance of the conspiracy. At the October 17, 2007 hearing, Judge Robison made several comments which could only be explained by reference to the exparte letter and attachments. Everyone at the October 17, 2007 hearing, other than Plaintiff,  knew of the improper exparte communication with Judge Robison pursuant to the conspiracy. After Plaintiff learned of the exparte communication, he requested a complete copy of same from Judge Robison. Consequently, Plaintiff was forced to file a motion to recuse Judge Robison. Since then, the conspirators and Judge

Robison, now as a conspirator, have refused to produce the faxed letter to Judge Robison and the fax logs from Comal County, and are believed to have engaged in spoliation of evidence, for which another federal civil rights action will be filed against them and other conspirators. No judgment was entered in the action.

This is not the first occasion on which Plaintiff has been compelled to sue SBOT, CFLD and attorneys employed by them. See Plaintiff's affidavit and exhibits describing his wrongful suspension in 1997 and the malicious conduct of the SBOT and CFLD attorneys which resulted in the filing of Cause No. 97-51928. The hostility against Plaintiff by SBOT and CFLD began when Plaintiff defeated CFLD in his first trial with CFLD in 1994. A high ranking official from the Chief Disciplinary Counsel's Office in Austin, Texas "got in Plaintiff's face" and very rudely told Plaintiff that they were going to do what ever they had to do to take Plaintiff's license. Plaintiff thereafter was the subject of grievances and lawsuits which would not have been prosecuted against anyone but him, due to the personal animosity of SBOT and CFLD toward him. The same scenario is happening in connection with the action, because Molleston, recently promoted to Regional Counsel, is concerned about the ramifications of him improperly obtaining Plaintiff's Bank Records and a potential civil action for such.

Plaintiff requests that the Court take judicial notice of Plaintiff's affidavit submitted in connection with the Original Complaint herein as further facts supportive of said Complaint, as well as the Supplemental Exhibits To Plaintiff's Original Complaint.

## ARGUMENT AND AUTHORITIES

### A. STATE BAR PROCEEDINGS CAN BE ENJOINED

In *Polk v. State Bar Of Texas, 374, F. Supp. 784 (N.D. Tex. 1974), affirmed at 480*

*F. 2d 998 (Fifth Cir.1973)*, the district court held that the SBOT's action against an attorney under the guise of prohibiting professional misconduct had the effect of chilling his constitutional rights and would serve as an impediment to the attorney's desire to practice law, and that the punishment contemplated under those circumstances would cause the attorney irreparable injury. Consequently, the court imposed a permanent injunction against the SBOT from issuing an order for the sanction against the lawyer on those facts. In arriving at its conclusions, the district court conducted an analysis of the so-called important state interests under *Younger*, pursuant to which Defendants seek abstention herein. The court, as should this Court, acknowledged that the state **does not** have legitimate interests in regulating conduct of attorneys which is protected and is outside the scope of an attorneys professional and official conduct. Such an examination of the facts in this case would reveal that Plaintiff has not been found to have commingled clients funds on  any competent evidence. The evidence the Defendants use to claim such is the affidavit of Plaintiff's accountant Tom Prude, which states that no commingling occurred. Plaintiff explained that he maintained his and his wife's separate funds in his trust account and spent them as directed, the same as for any other client. The state has no legitimate interest in regulating the manner in which an attorney spends or maintains his and his wife's funds, so long as he is not misappropriating other clients funds. The court also stated that where the protections of the constitution conflict with the efficiency of a system to ensure professional conduct, it is the constitution that must prevail and the system that must be modified to conform. This court, Plaintiff opines, should conduct an in-depth analysis of the so-called need to regulate professional conduct and discern what is really sought to be regulated in the state court disciplinary proceedings in order to determine that they are not legitimate state concerns. The state court proceeding is merely in furtherance

of the conspiracy against Plaintiff to prevent him from obtaining relief from a neutral judicial system concerning his personal constitutional rights, as is his right. The Defendants have shown this court no evidence that Plaintiff has committed any professional misconduct affecting his inability to represent his clients competently and professionally. To the contrary, the affidavit of Tom Prude compels the conclusion that Plaintiff has discharged his professional obligations to his clients in the highest letter and spirit of the cannons of ethics. **Only in those instances where an attorneys conduct threatens a significant state interest can a state restrict an attorneys exercise of his rights under the constitution, such as the right to life, liberty and property, as well as due process. It should be noted that on first impression, the district court abstained. On appeal to the Fifth Circuit, the matter was reversed and remanded to the district court, since the constitutional claims of the attorney would not be fully resolved by a determination in his favor of questions of state law.** Ergo, abstention would not be appropriate. The same reasoning is applicable here, in that the state court disciplinary proceedings will not fully resolve the constitutional claims asserted herein by Plaintiff. Ergo, abstention under *Younger* is inappropriate here.

In *Kugler v. Helfant, 421 U.S. 165, 95 S. Ct. 1524 (1975),* the supreme Court ruled that a federal court can intervene in a state court proceeding by way of either injunction or declaratory relief, in exceptional circumstances creating a threat of irreparable injury and if the prosecution is brought in bad faith. The Court further explained that exceptional circumstances justifying intervention by a federal court, include the situation where the state court is incapable of fairly and fully adjudicating the federal issues, as here. An extraordinarily pressing need for immediate federal equitable relief, as here, justifies a federal court's intervention in state proceedings.

In *The State Bar Of Texas v. Gomez, 891 S.W. 2d 243 (Tex.1994),* the Texas

Supreme Court was presented with the issue of the extent to which a Texas state district

court could enter orders concerning the supervisory control over the legal profession which

control was vested exclusively in the Supreme Court. The court of appeals concluded that

the district court did not have authority to **unreasonably** usurp the control vested in the

Supreme Court and that the **district court could only issue a prohibitory injunction,** not

a mandatory injunction. The Supreme Court stated that because the Court's power to

regulate the practice of law is an administrative one, the exercise of that power does not

in and of itself deprive lower courts of general subject matter jurisdiction over challenges

to that governance. While the Supreme Court dismissed the case based on justiciability,

it is clear that the Court was stating that even lower state courts had authority to regulate

the practice of law under certain undefined circumstances.

In *O'Quinn v. State Bar Of Texas, 763 S.W. 2d 397 (Tex.1988),* the Texas Supreme

Court clearly stated that it did not have jurisdiction over O'Quinn's constitutional issues. In

short, the Court said that they are prohibited from adjudicating constitutional claims that

would require additional factual development below. They would have to either treat them

as waived or dismiss the appeal. As in the instant matter, Plaintiff is precluded from

presenting on appeal in state court, the conspiracy and other constitutional claims asserted

herein which arose during the pendency of the state disciplinary proceedings, which means

that Plaintiff does not have an adequate opportunity to litigate his claims asserted herein

and the defenses related thereto in the state disciplinary proceeding, since the state

process does not afford him the legal opportunity to do so. Ergo, abstention is not

appropriate under *Younger.* In closing, the Court notes the inequality in the enforcement

of the disciplinary rules as between personal injury lawyers and corporate defense

attorneys and their inability to pass on the constitutionality of same because of the lack of fact development at the trial court level. It is unfair to cast Plaintiff in the position of waiving his constitutional rights due to the conspiracy of the Defendants herein and the others who have sought to preclude any discovery or factual development herein and at the state court level. See also *Daves v. State Bar Of Texas, 691 S.W. 2d 784 (Tex. App. Amarillo 1985)* concerning the district and appellate courts of Texas not being authorized to determine the constitutionality of disciplinary rules absent a controlling decision by the United States Supreme Court. This confirms that in appropriate circumstances, federal courts have a supervisory role concerning attorney discipline matters. Also, that this Court can determine whether the sanction levied is excessive and an abuse of discretion, similar to *Polk*, supra.

In *State Bar Of Texas v. Jefferson, 942 S.W. 2d 575 (Tex. 1997)*, the Texas Supreme Court ruled that to the extent the resolution of the constitutional issues raised by an attorney concerning a disciplinary proceeding does not interfere with a **specific grievance proceeding**, the district Court has jurisdiction to address them. In reference to the disciplinary action in state court, as demonstrated above, there is no procedure for Plaintiff to raise therein the  constitutional issues asserted herein. Accordingly, the exceptions to the *Younger* doctrine apply, and abstention is inappropriate. Further, there is no showing by the Defendants how the prospective injunctive relief sought by Plaintiff and the orderly progress of this action will impermissibly interfere with the disciplinary action in state court, which is **not a grievance proceeding**. The *Jefferson* case only pertains to a grievance proceeding, not state court litigation in which the Defendants have actively sought to deprive Plaintiff of his constitutional rights. Ergo, *Jefferson* does not preclude this Court from granting the relief requested by Plaintiff.

In *Board Of Law Examiners v. Gabriel, 953 S.W. 2d 227 (Tex. 1997)*, the Supreme

Court allowed an injunction by a district court to stand against the Board Of Law Examiners, because the Board had no power to make the inquiry it was attempting to make. The formerly pending disciplinary action in state court does not have the power to adequately investigate and rule on the constitutional issues presented by Plaintiff herein which affect the state disciplinary proceedings. That being the case, this Court is authorized to issue the relief sought by Plaintiff herein. **Even the dissent, on page 231, recognized that the Supreme Court was acknowledging that in certain circumstances, a district court could issue an injunction to enjoin a disciplinary proceeding. The dissent further stated that the Texas Rules Of Disciplinary Procedure do not authorize such equitable relief.** That being the case, then the Defendants herein must concede that there is no process for Plaintiff to assert his constitutional claims asserted herein in the state court disciplinary proceedings, and *Younger* is not applicable hereto.

In *Green v. State Bar Of Texas, 27 F.3d 1083 (5th Cir. 1994)*, the Fifth Circuit held that the dismissal of a civil rights complaint will not be affirmed if the allegations support relief on any possible theory. A review of the factual allegations asserted by Plaintiff herein, conclusively militate against dismissal hereof as sought by Defendants.

In *Bishop v. State Bar Of Texas, 791 F.2d 435 (5th Cir. 1986)*, the Fifth Circuit reversed the district court's dismissal of the complaint and ordered it to hold an evidentiary hearing to determine whether the conduct complained of was brought in bad faith (one of the exceptions to the application to the *Younger* Doctrine). The Court noted that the record in the state court did not indicate whether those proceedings had been completed. **On remand, the district court held a full evidentiary hearing with the presentation of documentary evidence and oral testimony.** This Court must conduct such an evidentiary

hearing to ascertain the existence of circumstances justifying the refusal to abstain under *Younger*.

In *Wightman v. Texas Supreme Court, 84 F.3d 188 (5th Cir. 1996)*, the Fifth Circuit stated that *Younger* did not apply when the State Bar acts in bad faith or to retaliate against constitutionally protected activity. Here, Plaintiff has presented overwhelming proof of bad faith, retaliation and conspiracy to coverup the illegal actions taken by the Defendants, all conspirators. Ergo, *Younger* does not apply. Further, the three prong test of *Middlesex* are not present: 1) the state does not have an important interest in regulating an illegal coverup of obtaining bank records improperly obtained and/or an attorney spending his and his wife's own money; and 2) there is no adequate opportunity in the state proceeding to raise constitutional challenges. Otherwise, in the subject state court proceeding, Defendants herein would have to agree that Plaintiff, at the present juncture of the proceedings, could assert and litigate the constitutional issues raised herein before a jury, as Judge Robison has stated that Ploch's possession of the documents is a fact issue and that the Defendants failed to give Plaintiff the due process notice and equal protection to which he was entitled. The due process notice talked about in the cases dealing with due process means throughout the process, not just at the inception to avoid a default situation. Otherwise due process notice and an opportunity to be heard, will be circumvented intentionally, as by the Defendants herein, when they decided to send a bogus subpoena to obtain evidence in a bad faith motivated disciplinary case without giving notice.

In *Middlesex County Ethics Committee v. Garden, ETC., 457 U.S. 423, 102 S.Ct. 2515 (1982)*, concerns of bad faith and other exceptional circumstances were discussed as creating an exception to the application of *Younger*. The Court was also concerned with

a litigant's right to have constitutional claims determined in the state court proceedings, so long as there was no showing of bad faith, harassment or some other extraordinary circumstances extant in those state court proceedings. Here, clear evidence of bad faith, harassment and other extraordinary circumstances in the state court proceedings exist compelling this Court to act and refuse to abstain under *Younger*. Also, with the spoliation of evidence in the state court action, Plaintiff cannot receive a fair hearing in the state proceedings, even if the federal claims could be asserted and litigated.

In *Jones v. State Of Mich., 525 F.Supp. 636 (E.D. Mich 1981)*, the Court held that the Defendant Board Of Dentistry was not immune under the Eleventh Amendment from a Dentist's demand for injunctive relief from an order suspending his license brought under the section of Civil Rights Act prohibiting deprivation of civil rights under color of state law. The principle's articulated therein equally apply hereto, particularly the discussion of injunctive relief for prospective unconstitutional behavior in *Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed 2d 662 (1974)*. See also, Cyrus Ex Rel. McSweeney v. Walker, 409 F. Supp. 2d 748 (S.D.W. Va. 2005), in which the court notes that **a court need only conduct a straightforward inquiry whether the complaint alleges a state's ongoing violation of federal law and seeks relief properly characterized as prospective, which Plaintiff herein has done.** Plaintiff seeks prospective relief that the Defendants not be able to use the bank records against him to enter a judgment of discipline in any proceeding, which is not prohibited by *Younger.*

In *Warnock v. Pecos County, Texas, 88 F.3d 341 (5th Cir. 1996)*, the court held that the Eleventh Amendment did not bar claims for prospective relief (reinstatement) or claim for attorney fees.

In *Louis v. Supreme Court Of Nevada, 490 F. Supp. 1174 (D. Nev. 1980)*, the court

held that prospective injunctive and declaratory relief is available against states in federal courts and that immunity does not ordinarily bar equitable relief and individual justices of Nevada Supreme Court could be ordered to permit the Plaintiff to sit for the bar exam if she could prove her claim for constitutional relief. Here, Plaintiff should be given an evidentiary hearing and/or trial before a jury to establish his right to the constitutional relief sought and thus enjoin the Defendants accordingly and obtain the requested declaratory relief, together with damages and attorneys fees against the Defendants.

In *Texas Ass'n Of Business v. Earle, 388 F. 3d 515, (5th Cir. 2004)*, the Fifth Circuit affirmed abstention under *Younger* based on very different facts than are present in this case. **TAB sought to enjoin the entire grand jury process and obtain a declaration that its conduct during the 2002 campaign season was protected under the First Amendment**. To the contrary herein, Plaintiff is not involved in a criminal proceeding and Plaintiff was not given his due process notice and opportunity to be heard of the proceeding involving an alleged subpoena whereby Defendants obtained his bank records, not to mention the conspiracy, whereas, in *Earle*, TAB received full notice of the subpoenas and there was no evidence of bad faith or other exceptional circumstances as in this case. Ergo, abstention herein under *Younger* is inappropriate.

In *Evans v. Morgan, 304 F. Supp.2d 1100 (W.D. Wis. 2003)*, the court talks about abstention based on the Defendant's claims of parallel proceedings pending at the state level, much as argued by Defendants in the instant matter. The Defendants herein argue that the pending state court proceedings will deal with the same issues extant herein, without explaining why and how that is the case and fail to demonstrate how Plaintiff will have an opportunity to receive money damages in the state court proceeding, in view of the case law which precludes such. The court also discusses the deprivation of a property

interest created by state law without due process. This case, together with other cases discussed herein, further underscores the inapplicability of *Younger*.

In *Devlin v. Sosbe, 465 F.2d 169 (7th Cir. 1972)*, the court held that **a civil rights action is supplementary to any remedy a state might offer and ordinarily a litigant need not exhaust his state judicial remedies before seeking relief in federal courts**. The court also recognized and agreed that **the use of the abstention doctrine in civil rights cases is not to be encouraged** and that the Supreme Court has expressed the opinion that " "it is better practice, in a case raising a federal constitutional or statutory claim to retain jurisdiction, rather than to dismiss..." *Zwickler, supra at 244 n. 4, 88 S. Ct. at 393.*"

In *Long Island Moratorium Committee v. Cahn, 437 F.2d 344 (2nd Cir. 1970)*, the federal district court properly refused to abstain from considering a civil rights suit since under the circumstances, **abstention could cause irreparable harm to the Plaintiff and effectively nullify their civil rights**. This Court should refuse to apply abstention based on irreparable harm to Plaintiff because Defendants are asking Judge Robison to disbar Plaintiff, see Supplemental Exhibits to Plaintiff's Original Complaint, which would effectively nullify his due process and equal protection rights.

In *Adibi v. California State Bd. Of Pharmacy, 393 F. Supp.2d 999 (N, D. Cal. 2005)*, Plaintiff sought to enjoin the revocation and suspension of his pharmacy license. The court held that the Board was not entitled to Eleventh Amendment immunity; that Eleventh Amendment immunity did not protect the executive director; that neither Board nor Director were entitled to absolute prosecutorial or judicial immunity; and that court would not invoke *Younger* abstention to dismiss the action. **The court also noted that even if timely and adequate state court review was available, the district court would not decline to**

consider the § 1983 action which sought injunctive and declaratory relief after the defendants sought to revoke or suspend his license, in that the § 1983 claims were easily separable from complicated state law issues and presented issues over which the state courts did not have special competence. In the instant case, as in *Adibi*, Plaintiff does not have an adequate opportunity to litigate his alleged claims in the state court proceedings, as his license to practice law is subject to suspension or disbarment before he has an opportunity to have his constitutional claims considered, since Judge Robison has already ruled that the Defendants can use the subject documents, unless the Defendants were to agree that Plaintiff could still proceed to try his constitutional claims to a jury, which is not permitted by the state disciplinary procedure. **The court also noted that the adequacy contemplated for *Younger* to apply requires that such opportunity to be timely, that is prior to the administrative deprivation**. In the instant case, the evidence has been closed in the state court proceeding, except as to the punishment phase of the trial, so Plaintiff has no meaningful opportunity to timely litigate the civil rights claims asserted herein prior to being deprived of his license to practice law. See pages 49,48 and 60 of the transcript from the October 17, 2007 hearing, Supplemental Exhibits to Plaintiff's Original Complaint. Also, if one factors in the conspiracy manifest by the October 11, 2007 letter from Ploch to Judge Robison, and it is clear that Plaintiff had no opportunity, as was the purpose of the conspiracy among all of the Defendants.

In *Alexander v. Ieyoub, 62 F.3d 709 (5th Cir. 1995)*, the Fifth Circuit held that the district court abused its discretion in refusing to exercise jurisdiction based on *Younger* abstention, and refused to apply *Younger* abstention to a § 1983 case for monetary relief even though Plaintiff therein had sought in the pending state court proceeding monetary damages and the return of her car. **Of interest to Plaintiff herein, is the court's**

comments that the action of delaying the state court proceeding for three years was **unreasonable, but not in conflict with state law.** Such is the case here, in that upon the Defendants actionable conduct being discovered, no action in the state court proceeding occurred from June of 2004 until April of 2007, almost three years. **Such delay, taken with the other actionable conduct of the defendants, should at least preclude the application of *Younger* to the instant case where Plaintiff seeks damages. See footnote 22 on page 713, pertaining to *Younger* not applying to a suit for damages.**

In *Lewis v. Beddingfield, 20 F.3d 123 (5th Cir. 1994)*, the court noted that the course of action for a district court to take when *Younger* did apply, was to stay the civil rights action pending resolution of the state court proceedings, because the claims for monetary relief would not be addressed in the state court proceeding.

In *Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 1733, 56 L. Ed. 2d 285*, the Supreme Court stated that a private citizen may be subject to liability under § 1983 for the deprivation of a right or interest secured by the constitution and laws of the United States , when he does so under color of state law. Also, for a party to be subject to suit under § 1983, the asserted deprivation of rights must stem from conduct fairly attributable to the state, as here, the SBOT, CFLD and their attorneys. *Davis Oil Co. v. Mills, 873 F.2d 774,779 (5th Cir. 1989)*. **Also, actions of a private party may be attributed to the state if certain conditions are met.** *Davis Oil Co. v. Mills, 873 F.2d 774,779 (5th Cir. 1989)*. Further, a conspiracy may be charged under § 1983 as the legal mechanism through which to impose liability on all of the Defendants without regard to who committed the particular act. *Pfannstiel v. City Of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990)*. Plaintiff has demonstrated such a conspiracy.

In *Belt v. Commission For Lawyer discipline, 970 S.W. 2d 571 (Tex. App.- Dallas*

1997), the court confirmed that a party to a lawsuit waives a right to raise even a constitutional claim on appeal if that claim is not presented to the trial court. In the state court disciplinary proceeding, Plaintiff herein raised certain constitutional and federal claims to the manner in which the bank records were obtained by Defendants, as well as the conspiracy. The trial court process, however, did not allow Plaintiff an opportunity to assert the constitutional claims asserted herein, which is proof that *Younger* should not apply to the instant action.

In the unpublished opinion of *Worldpeace v.Lang*, 2006 WL 44420 (Tex. App.-Houston[14th Dist] 2006), the court held that the State Bar disciplinary proceedings do not allow for the attorney to assert claims for monetary damages against third persons. Presumably, the same would apply to the SBOT, CFLD and their attorneys, such that there is no process or procedure for Plaintiff herein to pursue his claims in the state disciplinary proceeding for monetary or injunctive relief, thus rendering in appropriate *Younger* abstention.

In *Alley v. Angelone, 962 F. Supp. 827 (E.D. Va. 1997)*, the court held that state officials sued in their official capacity for injunctive relief are persons subject to suit under § 1983, as such actions are treated as actions against the state. Accordingly, at the very least, Plaintiff's claims against Molleston, Bersch and Ploch should be allowed to proceed without delay.

In *New Orleans Public Serv. v. Council Of New Orleans, 491 U.S. 348, 109 S. Ct. 2506 (1989)*, the court conducted an analysis of the claimed state interest in determining whether *Younger* abstention should be applied. The court concluded that after appropriate inquiry as to the state interest involved, abstention under Younger was not appropriate. This Court should conduct such an analysis, as indicated herein above and refrain from

abstention under *Younger*.

In *Green v. City Of Tuscon, 255 F.3d 1086 (9th Cir. 2001)*, the court held that the *Younger* doctrine does not apply to non parties to the state court litigation, such as the SBOT, Bersch, Molleston and Ploch. Further, that *Younger* is not applicable merely because the federal action may influence the state court action. Accordingly, the instant action should continue and not be stayed.

In *Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004)*, the court held that where *Younger* did apply, federal courts should not dismiss where damages are at issue, but should stay them until the state court proceedings are completed. **The court also talks about whether the federal litigant is barred from litigating federal constitutional issues in the state court proceeding, which is taken to mean that Plaintiff herein, must have the functional ability to litigate all of the claims asserted herein in the state court proceedings against all of the Defendants hereto, which is not permissible here, under the *Middelsex* test.**

In *Olson v. Fajardo-Velez, 419 F. Supp. 2d 32 (D. Puerto Rico 2005)*, the court held that even in cases where the Younger prerequisites are satisfied, a federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the Plaintiff demonstrates **bad faith, harassment, or any other unusual circumstance**. Certainly, it cannot be gainsaid that Defendants have been engaging in bad faith, harassment and **other unusual circumstances**, as described in Plaintiff's complaint and affidavit attached thereto. Again, the result is that *Younger* is inappropriate.

In *Guillemard Gionorio v. Contreras Gomez, 301 F.Supp.2d 122 (D.Puerto Rico 2004)*, the court stated that the court should not abstain under *Younger* where the state proceedings are, as here, undertaken in bad faith or other extraordinary circumstances are

involved or a patently unconstitutional statute is at issue. Here, the Defendants, knowing that they had stolen documents which were precluded by existing state court orders, filed the disciplinary action and then, in furtherance of the conspiracy, which began with the theft of Plaintiff's records, Defendants stole Plaintiff's bank records with a so-called subpoena, which was not really a subpoena at all, as it did not comply with the statutory requirements of same. Certainly, at the very least, we should be able to expect the State Bar attorneys to know long standing statutes concerning the legal issuance and service of third person witness subpoena's, unless we are to characterize them as **plainly incompetent**, as discussed below, in which event they are entitled to no immunity whatsoever.

### B. IMMUNITY DOES NOT APPLY

**The defense of immunity is to be sparingly applied in civil rights cases**. *James v. Ogilvie, 310 F. Supp. 661 (N.D. Ill. 1970)*. Further, Public officials are not immune from suit when they allegedly violate the civil rights of citizens. Also, relief under § 1983 is not inappropriate even where relevant state remedies are available. The court noted that federal courts have the power to grant equitable relief for violations of constitutional rights, and may issue injunctions when the alleged injury is irreparable and no other adequate legal remedy exists.

In *Stinnett v. Fallon County, Montana, 72 Fed Appx. 642, 2003 WL 21801546 (C.A. 9 [Mont.])* , the court held that the special prosecutor was not entitled to immunity in a § 1983 case, for his deliberate actions of falsifying statements against the Plaintiff. As a result of the intentional conduct of Molleston and Bersch and their involvement in the conspiracy, no immunity is afforded them for their actionable conduct. Further, their conduct is attributable to SBOT and CFLD, as supervisory liability for civil rights violations. *Baynard Malone, 268 F.3d 228, 235 (4th Cir. 2001; Tigrett v. Rector And Visitors Of The*

*Univ. Of Va.,* 290 F.3d 620,630 (4th Cir. 2002).

In *Coburn v. Nordeen,* 72 Fed Appx. 744, 2003 WL 21662064 (C.A. 10[Kan.]), the court held that Plaintiff was not required to meet the heightened pleading standard when qualified immunity was raised as a defense to a § 1983 claim. Accordingly, Plaintiff herein is not required to adhere to the heightened pleading standard, as claimed by Defendant.

In *Marrero v. City Of Hialeah,* 625b F.2d 499 (5th Cir. 1980), the court stated that violations of Fourth Amendment rights are actionable under § 1983; that injury caused by unconstitutional conduct is compensabie as eiement of damages under § 1983; that one's business is property which cannot be injured or destroyed without due process; that a plaintiff can recover for lost good will in a § 1983 case; that reputational interests rise to the level of liberty interests and Fourteenth Amendment demands no less than full compliance with due process. Plaintiff submits that same applies to the instant action and the claims asserted by him herein.

In *Ames v. Vavreck,* 356 F. Supp. 931 (D. Minn.), the court held that the complaint stated a cause under § 1985 concerning the deprivation under color of state law of rights secured by the constitution and for statutes authorizing action for damages for conspiring. The court, as here, dealt with allegations that the defendants had acted in bad faith, wilfully and maliciously, with a knowing and specific intent to deprive Plaintiff of specified constitutional rights. **Plaintiff herein has stated a § 1985 cause of action, to which no immunity applies.**

Further, in *Hodgson v. Mississippi Dept. Of Corrections,* 963 F. Supp. 776 (E.D. Wis.) the court stated that state law cannot immunize the conduct of someone acting under color of state law which is wrongful under §1983; and that qualified immunity is not available to someone who is plainly incompetent or who knowingly violates the law. Plaintiff opines that

the evidence overwhelmingly condemns Defendants actions as knowing. See also *Leisure v. City Of Cicinnatti, 267 F.Supp. 2d 848 (S.D. Ohio 2003)*( issues of excessive force, selective enforcement claims, lack of probable cause; **policy of abusive practice and enforcement precluded motion to dismiss and officer was not entitled to qualified immunity**.). Further, Plaintiffs rights that Defendants violated were clearly established at the time of the constitutional violation. *Myers v.Baca, 325 F.Supp. 2d 1095, at 1112 (C.D. Cal. 2004)*, citing *Saucier, 533 U.S. at 200, 121 S.Ct. 2151.* See also, *Herrera v. Las Vegas Metropolitan Police Dept, 298 F. Supp.2d 1043 (D. Nev. 2004)*, where fact issues concerning the conduct of the Defendants precluded a motion to dismiss civil rights action under § 1983. Also, in *Safeguard Mut. Ins. Co. v. Miller,456 F. Supp. 682 (E.D. Pa. 1978)*, the court noted that **conduct that fell outside of the proper scope of authority and official function for a prosecutor, such as that by the Defendants here, were entitled to no immunity at all and that qualified immunity was available only on a showing of actions taken in good faith**. Clearly, good faith is not applicable to the Defendants conduct herein. Even supervisors can be held liable for constitutional injuries inflicted by their subordinates. *Baynard Malone, 268 F.3d 228, 235 (4ᵗʰ Cir. 2001; Tigrett v. Rector And Visitors Of The Univ. Of Va., 290 F.3d 620,630 (4ᵗʰ Cir. 2002).*

Further, the Eleventh Amendment does not bar a request in a § 1983 case for reinstatement of a license, as said relief is prospective in nature, and may apply to a state official in their personal capacity. *Mason v. Arizona, 260 F. Supp. 2d 807 (D. Ariz. 2003).* See also, *Lupo v. Voinovich, 235 F. Supp.2d 782 (S.D. Ohio 2002)*, which dealt with a claim for prospective injunctive relief not barred by the Eleventh Amendment.

## C. ROOKER-FELDMAN DOES NOT APPLY

In *Guttman v. Khalsa, 446 F.3d 1027 (10th Cir. 2006)*, the court specifically **held that the *Rooker-Feldman* doctrine only applied to suits filed after the state court proceedings are final**. The Plaintiff's federal civil rights action in *Guttman*, was filed when his petition for certiorari to the state supreme court was pending. Ergo, the state court proceedings were not final. Here, not even a summary judgment order has been signed by the trial court. Accordingly, *Rooker-Feldman* does not apply to the instant action. *Manos v. Caira, 162 F. Supp. 2d 979 (N.D. Ill. 2001)* also discusses the applicability of *Rooker-Feldman* in appropriate instances not present here, but more importantly discusses *Younger* abstention, immunity, stating claims under due process and equal protection, seizure of property, and concludes with a statement that **qualified immunity is almost always a bad ground for dismissal for failure to state a claim of a § 1983 suit** and is more appropriately addressed on a motion for summary judgment.

### D. **BANK RECORDS ARE CONFIDENTIAL**

The Defendants told Judge Evans in June of 2004, see Supplemental Exhibits To Plaintiff's Original complaint, that they were entitled to obtain copies of Plaintiff's bank records without notice to Plaintiff in the disciplinary action based on § 59.006 of the Texas Finance Code. However, Defendants were not entitled to claim the applicability of §59.006 of The Finance Code once they had indicated the clear intent to pursue discovery under The Texas Rules of Civil Procedure, by serving a document production request, objected to by Plaintiff, and referring to same in the very sham subpoena they sent to Frost National Bank to obtain the bank records. Further, §59.006 of The Finance Code is procedural and cannot take precedent over discovery rules which address discovery and compliance with subpoenas. *British International Insurance Company, LTD v. Seguros La Republica, S.A.*

200 F.R.D. 6 (W.D. Tex 2000).  While the *British International case* dealt with Federal Rules of Civil Procedure on discovery, the Texas Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, and §59.006 of the Texas Finance Code is in fact a Texas Statue. It cannot be disputed that the same principles enunciated therein apply to the mandatory discovery and notice rules contained in the Texas Rules of Civil Procedure sought by litigating parties in the state action. Said Finance Code section refers to § 30.007 of the Civil Practice And Remedies Code as governing when obtaining civil discovery of a customer's records, and also refers to **15 U.S.C.A. § 6821, et seq, concerning false pretenses and fraudulent access to financial institution customer information.** It also refers to the **Right To Financial Privacy Act Of 1978 (12 U.S.C. § 3401, et seq. ).** Further, **bank customers do have an expectation of privacy associated with their confidential bank records.** *Sornberger v. First Midwest Bank, 278 F. Supp. 2d 935 (C.D. Ill. 2002).* There is even authority that while an attorney's bank records may be privileged as to he and his clients, no such attorney-client privelege attaches to the documents when obtained from a bank. That is probably the reason that the Defendants tried the bogus subpoena route, because they knew the bank records would be viewed by Judge Evans as confidential, see Supplemental Exhibits To Plaintiff's Original Complaint.

Judge Evans said that the bank records obtained from Frost National Bank were confidential. See page 14, lines 21 and 22 of the hearing transcript of June 11, 2004. Further, **12 U.S.C. § 3401, et seq, states that financial records of a customer of a bank are confidential, and Wayne v. First Citizen's National Bank, 846 F. Supp. 310 (M.D. Pa. 1994), affirmed 31 F.3d 1175, has held that cancelled checks are "financial records"** for purposes of the RFPA. Further, **12 U.S.C. § 3418** states that in addition to other relief, **injunction relief shall be available.** If Plaintiff were successful in that regard,

he would be entitled to attorneys fees for such, as determined by the court.

Accordingly, both Judge Evans and the RFPA have acknowledged that copies of Plaintiff's cancelled checks in Frost National Bank's possession are confidential and Plaintiff is entitled to an injunction to compel the return of same.

### E. **RULE 12 (b) (6)**

In *Streit v. Bushnell, 424 F. Supp. 2d 633, (S.D. N.Y. 2006)*, the court stated that the court's point of departure in a 12(b)(6) analysis is that plaintiff need provide only a short and plain statement of the claim showing entitlement to relief. Plaintiff herein has done exactly that, based on the authority discussed herein above concerning not only the § 1985 conspiracy claims, but the § 1983 due process and equal protection claims, together with the state pendent claims, which are subject to notice pleadings, not the technical requirement of stating all of the elements. That would be the subject of a motion for summary judgment, not a motion under 12 (b)(6). The court must also accept as true the plaintiff's account of the facts and draw all reasonable inferences therefrom in plaintiff's favor, regardless of defendants denials and contrary versions of the underlying events. Viewing the facts as pled by Plaintiff herein, it is undisputed that he has stated claims on which relief can be granted under §§ 1983 and 1985.

Also, the standard of rational basis review, rather than heightened level of judicial scrutiny applies to §1983 claims for equal protection. *Citizens For Equal Protection v. Bruning, 455 F.3d 859 (8th Cir. 2006)*.

Contrary to the assertions of the State Bar Defendants, this Court has jurisdiction over the civil rights actions contained in Plaintiff's Original Complaint And Application For Injunctive Relief. See *Goodrich v. Supreme Court Of The State Of South Dakota, 511 F.*

2d 316 (8*th* Cir. 1975). Plaintiff avers that none of The State Bar Defendants' immunity defenses are applicable to the causes of action asserted herein.

In *Podiatrist Ass'n v.La Cruz Azul de P.R., Inc., 332 F.3d 6, 19 (1*st* Cir. 2003)*, the court noted that the facts pled by Plaintiff can be either direct or inferential as to the elements for recovery under some theory of recovery.

## CONCLUSION

This court should deny Defendants Motion To Dismiss for the following reasons:

1) There are no pending state court proceedings. Cause No.2003-63182, *Commission For Lawyer discipline v. George Neely* has been removed to U.S. District Court, under cause No. H-08-0569, pursuant to *Goodrich v. Supreme Court Of State Of South Dakota, 511 F. 2d 316 (Eighth Cir. 1975)* and the Court's reference to removal under 42 U.S.C. § 1983 by a state court Defendant for the determination of his constitutional claims, citing *England v. Louisiana Medical Examiners, 375 U.S. 411, 422 n.13, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964)*, which states that "...but the Defendant also, by virtue of removal jurisdiction, 28 U.S.C. § 1441, has a right to litigate the federal question there [federal court]. Once issue has been joined in federal court, no party is entitled to insist, over another's objection, upon a binding state court determination of the federal question." Also, 28 U.S.C. § 1443.

2) A motion to transfer and consolidate Cause No. H-08-0569 with the instant action has been filed, thus allowing the joint management of both cases by this Court.

3) There is no adequate opportunity for Plaintiff to litigate his constitutional claims asserted herein in the state proceedings, as the process pertaining to attorney

disciplinary actions does not afford him the opportunity to do so. Also, there is no stay as to parties who are not parties to any state court proceeding.

4) There is no legitimate state interest in (1) covering up a conspiracy to violate Plaintiff's constitutional rights and spoliate evidence of same; and (2) regulating an attorney spending his own money. To ascertain any legitimate state interest, this Court must conduct its own analysis of the claimed state interest at issue, and not merely accept what the Defendants claim.

5) The existence of bad faith, malice and other exceptional circumstances involving irreparable harm to Plaintiff militating against abstention, in that the conspiracy perpetrated by Defendants, intentionally sought to violate Plaintiff's constitutional rights and has as its ultimate purpose the disbarment of Plaintiff, according to Mr. Bersch's statement to Judge Robison at the October 17, 2007 hearing. Further, a hearing should be conducted in connection with claims of bad faith and exceptional circumstances.

6) Plaintiff is not precluded from seeking prospective equitable and injunctive relief, whereby Defendants may not enter a judgment of disbarment against Plaintiff. See pleadings in Cause No. H-08-0569, which establish that only a docket entry was recorded by Judge Robison, and no order.

7) *Rooker-Feldman* doctrine is inapplicable, in that there is no final order in the former state court action, now cause No. H-08-0569.

8) Plaintiff will be irreparably harmed for which he has no adequate remedy at law, justifying the imposition of prospective injunctive relief, since Defendants actions constitute a continuous pattern of conduct violative of Plaintiff's constitutional rights.

9) Immunity and qualified immunity are not available under the circumstances presented herein.

10) Dismissal under Rule 12(b)(6) is not justified, as Plaintiff has complied with the well pled pleading requirements thereof.

11) Plaintiff's pendent state claims are legitimately before this court and should proceed with all of the other claims asserted herein, as this is a notice jurisdiction and Defendants have been provided such notice, as demonstrated by their motion to dismiss.

12) Plaintiff is entitled to pursue his claims for damages and attorneys fees.


WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court deny The State Bar Defendants' Motion To Dismiss, and that, upon an evidentiary hearing, Plaintiff be granted a temporary injunction against Defendants, jointly and/or severally, as requested by Plaintiff herein, together with such other and further relief, whether at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


George R. Neely
State Bar No. 14861750
540 Heights Boulevard
Houston, Texas 77007
1925 FM 723
Rosenberg, Texas 77471
(713) 521-9666 - Telephone
(713) 522-9669 - Facsimile

**PLAINTIFF PRO SE**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Response To The State Bar Defendants' Motion To Dismiss was served on opposing counsel of record in accordance with the Federal Rules Of Civil Procedure, this _____ 29ᵗ day of February, 2008.

_____
George R. Neely

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0569 |
| | § | |
| GEORGE R. NEELY, | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF KELLEY M. KELLER IN SUPPORT OF**
**MOTION FOR COSTS AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1447(c)**

| | |
|---|---|
| **COUNTY OF HARRIS** | § |
| | § |
| **STATE OF TEXAS** | § |

I, **Kelley M. Keller,** counsel for the Commission for Lawyer Discipline (the "CLD"), hereby state as follows:

1.       I am an attorney licensed to practice law in the State of Texas since 1989.  I am licensed to practice in the United States District Court for the Southern District of Texas.  I am employed by Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), in Houston, Texas, and am one of the attorneys for the CLD in the above-entitled matter.  I am duly authorized to make this affidavit on behalf of the CLD.  The information contained herein is true and correct and is based on my personal knowledge obtained through my years of practice and my representation of the CLD.

2.       The CLD retained Skadden on a pro bono basis to represent it in connection with an action brought by George R. Neely ("Neely") under Case No. H-07-4517, styled *George R. Neely v. State Bar of Texas, et al.*, in the United States District Court for the Southern District of Texas, filed December 26, 2007.  Following that engagement, Neely removed this Action, pending in the 164th Judicial District Court of Harris County Texas, under the *Commission for Lawyer Discipline v. George R. Neely*, Case No. 2003-63182 (the "Disciplinary Action"), to this Court.  The CLD requested that Skadden's engagement also include the representation of the CLD in this Action.

3.       I and attorneys with Skadden spent in excess of 8 hours researching and writing the Motion to Remand.  The services performed in connection with the removal and remand were reasonable and necessary.

4.       To avoid any dispute regarding reasonable hourly rates, the CLD requests only $250 per hour, as approved by the court as reasonable in *State and County Mut. Fire Ins. Co. v.*

*Walker*, 228 S.W.3d 404, 408-09 (Tex. App.—Fort Worth 2007, no pet.).[1]  Accordingly, the CLD requests an award of attorneys' fees in the amount of $2,000.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Kelley M. Keller

---

[1]      As Skadden represents the CLD on a pro bono basis, this request does not reflect the normal hours rates charged to clients of the firm.